GULOTTA, Chief Judge.
These are consolidated tort actions by convenience store employees who were injured during an armed robbery. Plaintiffs appeal from a summary judgment dismissing their claims against Purolator Courier Corporation and Purolator Armored, Inc. (Purolator), courier and armored car companies under contract to pick up the store’s bank deposits. The petition alleged that Purolator employees had failed to notify plaintiffs’ employer or the police upon discovering that the store was suspiciously locked and apparently vacant at the scheduled pick-up time during normal business hours while the robbery was in progress in a secluded part of the premises. Because the undisputed material facts establish that the defendant courier did not breach any legal duty to protect these plaintiffs from criminal harm inside the store, we affirm the summary judgment of dismissal.
At approximately 8:15 a.m., on August 8, 1983, two robbers armed with a revolver and a machete entered the Majik Market at 3400 Franklin Avenue in New Orleans and forced the four store employees into an enclosed part of the building, locked the front door of the premises, and hung a makeshift cardboard sign on it stating that the store was “closed for inventory”.
Shortly before 8:30 a.m., Purolator employees arrived in their armored truck to make their regularly scheduled pick up of the store’s receipts pursuant to their contract with Munford, Inc. (Munford), the store owner. Upon finding the front door locked and seeing the sign, the Purolator guard peered through the door and windows of the store but saw no persons or indications of any disturbance inside. The Purolator guards then radioed their supervisor and told her that the store was closed for inventory and they could not pick up the receipts. The supervisor instructed them to continue on their scheduled route.
In the course of the robbery, the store employees were brutally beaten and slashed at the hands of the criminals. Plaintiff-employees subsequently filed suits against Gulf Oil Corporation (the owner of the land and building where the store was located), Munford (their employer), and Pu-rolator. Although the specific language of the petitions varied, the gist of the allegations against Purolator was that the courier was negligent because its employees had left the scene without reporting the un *1192 usual and suspicious circumstances to Mun-ford, Inc. or the police so that the robbery could have been stopped and the physical injuries to plaintiffs prevented.
Pursuant to a written contract with Mun-ford, Purolator had agreed to call for and receive daily deposits from Munford’s stores in the New Orleans area. Purolator and Munford also had an oral agreement whereby Purolator was to notify Munford’s main office if there were any problem or delay in making a pick-up at a particular store. The purpose of this requirement was to prevent discrepancies in amounts picked up and amounts deposited, and to avoid repeat trips by Purolator, which were costly to Munford.
In support of its motion for summary judgment, Purolator argued that it was not liable to plaintiffs for the harm inflicted by third party criminals since its contract with Munford provided only that Purolator was to pick up and transport store receipts, not to provide security services to protect Mun-ford employees inside the premises.
In opposition to the motion for summary judgment in the trial court, and now on appeal, plaintiffs contend that Purolator’s contractual duty encompassed not only the risks incurred in the transport of the money and receipts, but also risks reasonably foreseeable in connection with the movement of money from the premises. Plaintiffs point out that because Purolator and Munford had agreed that Munford would be notified immediately if any difficulties arose during a Purolator pick up, there are factual questions whether the Purolator guards acted reasonably in leaving the scene without inquiring further or alerting Munford or the police when they had never before seen a Munford store closed for inventory. According to plaintiffs, it was foreseeable that an armed robbery could occur immediately prior to a scheduled pick up, and that harm to the store employees could have been prevented if Purolator had followed the proper procedures. We disagree.
Under the duty risk doctrine, the pertinent inquiries are whether the conduct complained of was the cause in fact of the harm, whether the defendant had a duty to protect against the risk involved, whether defendant breached that duty, and whether plaintiff suffered damages as a result. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984); Thomas v. Missouri Pacific R. Co., 466 So.2d 1280 (La.1985). Whether a duty exists is a question of law. Harris v. Pizza Hut of Louisiana, Inc., supra. Having reviewed the pleadings, documents, affidavits, and depositions, we conclude that Purolator violated no duty owed to these plaintiffs and that the trial judge properly dismissed Purolator on its motion for summary judgment.
The affidavits and depositions in the instant case conflict on the question whether Purolator notified Munford on the morning of August 8 that the Franklin Avenue store was apparently closed and that the regular pick-up could not be made. Although Puro-lator’s vault manager stated in deposition that she notified Munford immediately after receiving the call from her guard at 8:27 a.m. to say that the Franklin Avenue store was closed, employees at the Mun-ford main office denied receiving any such call. Nonetheless, this unresolved factual issue is not material to the legal question of Purolator’s liability. Even assuming Pu-rolator failed to notify Munford, the next inquiry is whether Purolator thereby breached a duty to protect the plaintiffs against the particular risks involved.
Under its written contract, Purolator agreed to call for and receive shipments of valuables from Munford to be transported and delivered to a designated consignee. Purolator agreed to assume liability "... for any loss, damage or destruction of property ... from the time it is received by PUROLATOR until such time as it is delivered to the consignee designated by the CUSTOMER [Munford] to receive same....” The contract further provides that Purolator is not to be liable for any loss caused by or resulting from “non performance or delays; but PUROLATOR agrees to be liable for the safety of any property received into its possession at any time” not to exceed the maximum amount of liability set forth in the contract.
*1193 Although it is clear that Munford and Purolator had orally agreed that Purolator was to notify Munford’s main office immediately of any problems in making a pick-up at a particular store, the reason for this notice was financial in nature. Munford’s general manager, Joseph Guidry, stated in deposition that occasionally Munford employees did not have the store receipts ready for pick-up when the Purolator truck arrived. According to Guidry, Purolator agreed to call Munford’s main office not because of concern for the “security” of the stores or because Munford wanted to know if the store was open or not, but rather because Munford wanted an opportunity to resolve the delay problem immediately, if possible, to avoid deposit shortages or double charges if Purolator had to return later to make a second pick-up. Significantly, Guidry stated that Munford had contracted with another company for security guard services on the store premises during evening hours only, and that Puro-lator was not in the business of providing such security.
Purolator company literature and the depositions of Purolator’s vault manager and the guard who actually attempted to make the pick-up at the Franklin store on the morning of the incident likewise establish that Purolator only transported valuables for its customers, and did not provide security services for the stores or ferret out crimes in progress. Malvin Honoré, the Purolator guard, stated in deposition that he had been trained by Purolator to realize that he was not a policeman and should not try to make a citizen’s arrest if he were to see a robbery going on. His job was to pick-up and deliver shipments for Purolator customers. Honoré stated that although he had never seen a Munford store closed during a scheduled pick-up before, nothing at the scene gave him the impression that anything unusual was happening. He assumed that the apparent closing of the store for inventory was a new procedure by Munford, whose personnel would be in the store later to perform the inventory.
There is no general duty to protect others from criminal activity of third persons. Harris v. Pizza Hut of Louisiana, Inc., supra. Considering the pleadings, depositions, affidavits, and exhibits submitted, we conclude that Purolator did not assume any duty to protect these plaintiffs from a third party crime. Although Purolator had a contractual duty to notify Munford’s main office when a scheduled pick-up could not be made, this duty was not intended to prevent the risk of crime, but rather to prevent bank deposit shortages and the need for return trips by Puro-lator couriers. As such, Purolator’s duty to notify Munford encompassed financial risks to property only, not security risks to Munford’s employees. Under the undisputed material facts of the instant case, it is clear that Purolator breached no legal duty owed these plaintiffs and is not liable for the unforeseeable acts of violence the robbers perpetrated inside the apparently closed store.
In affirming the trial court’s judgment, we are mindful that summary judgment procedure is seldom appropriate in negligence cases where the determination of whether or not a defendant’s conduct is tortious almost always involves a factual dispute. Nonetheless, where the operative facts are fairly well established, summary judgment may be used to permit the dismissal of one of several defendants without a trial on the merits. Cosse v. Schwegmann Brothers Giant Supermarkets, 336 So.2d 1074 (La.App. 4th Cir.1976); Pickett v. Jacob Schoen & Son, Inc., 488 So.2d 1257 (La.App. 4th Cir.1986). Under the facts extensively developed on the motion for summary judgment in the trial court in this case, the defendant courier is entitled to a judgment as a matter of law. Under these circumstances, we conclude the trial judge properly granted summary judgment dismissing plaintiffs’ claims against Purolator.
Accordingly, the judgment is affirmed.
AFFIRMED.