DUFRESNE, Judge.
This is an appeal by Hendrik Kok, Stephen Beke and Wouter Jouster, plaintiffs-appellants, from a judgment dismissing their suit against Luis Salazar, defendant-appellee for breach of fiduciary duty and resulting damages. Because we find that Salazar did not breach any fiduciary duty owed to plaintiffs, and did not otherwise negligently cause their damages, we affirm the judgment of the trial court.
At the time this litigation arose, Salazar was an independent importer of European luxury cars into the United States. He first made contact with Hendrik Kok, a European, in Jefferson Parish in the spring or summer of 1983. As a result of this meeting, an oral agreement was made whereby Kok and his two European associ *1299 ates, Beke and Jouster, would purchase and ship to the U.S. a Mercedes-Benz automobile. Salazar would receive the car here, prepare it for the American market, and sell it. Any profit from the sale would be divided equally between Salazar and the European group.
Kok returned to Europe, and a month or so later notified Salazar that his group was having trouble in locating a car, and asked Salazar to put them in touch with a dealer. Salazar directed them to a Mr. Sull in Munich. After contacting Sull, they found that he did indeed have a car available. Without ever having seen the car, they wired him the money, and Sull in turn shipped the car to Salazar. The car was promptly resold, and one-half of the $6,000 profit was sent to the European group. The original purchase money, some $34,-000, was not returned directly to the Europeans, but with their knowledge and consent was placed in a bank account which Salazar maintained in Germany.
After this first successful venture, a written contract was signed by all of the parties in September 1983. This document, like the previous oral agreement, provided that Kok and his associates would provide the purchase money for future cars and arrange for shipment of them to the U.S. Salazar for his part would consult with Kok on selection of the vehicles, and would receive and sell them on their arrival here. Transfer of titles from Kok to the ultimate buyers, and division of the profits, was to be handled by Kok’s attorney in Jefferson Parish.
In October, 1983, Salazar went to Europe on other business. He met with Lut Rietz-schel, an automobile dealer in Wiesbaden, from whom he had previously purchased a car without incident. At that meeting, Salazar put down an $800 deposit on a used Porsche that Rietzschel expected to have in a few days. He also learned that Rietz-schel was expecting delivery on a new Mercedes.
In later October, Salazar met Kok, Beke and Jouster in Brussels to discuss arrangements for getting more cars. Salazar told the group that he wanted them to do five cars at a time, rather than one, because he had enough capital on his own to do one-car deals, and would thus be splitting his profits on one-car deals with them for nothing.
The following day Jouster telephoned Salazar on behalf of the group and told him that their financial backers were skeptical of a five-car deal, and wanted to see another one-car deal done before advancing funds for such larger deals. Salazar agreed to another one-car deal, and told Jouster about the Mercedes that Rietzschel was expecting. Jouster said he would discuss the matter with the others and several days later he phoned Salazar to tell him that they would buy the car. Salazar gave him all of the pertinent information about the car and Rietzschel, and Jouster agreed that Salazar should wire the money from his German account directly to Rietzschel on November 9, the day the car was to be delivered to this dealer from the factory. Salazar told Jouster that he would wire the money, and also told him that he was returning to the U.S. in two days, that it would be up to him and his group to see that the car was picked up from Rietzschel and shipped to the U.S. Salazar then wired the group’s $34,000 to Rietzschel as well as $2,000 of his own money to make up the shortfall on the $36,000 purchase price.
Salazar returned to the U.S. expecting to receive delivery of the car, for which he already had a prospective buyer, in about a week. When the car did not arrive in mid-November as expected, Salazar immediately phoned Jouster in Amsterdam for information. Jouster apparently knew nothing of the problem, so Salazar told him to drive to Wiesbaden and find out from Rietzschel what had happened to the car. Salazar stated that he was concerned because German car dealers were always prompt and stood by their word; and he expressed his concern to Jouster and urged him to take immediate action.
The record shows that Jouster did nothing about the problem until a month later, when he telephoned Rietzschel on December 16. In a subsequent series of phone calls and telexes, Rietzschel made various *1300 excuses and promises about delivery of the car, but failed to produce it.
Suit was filed to recover the money and a judgment was obtained against Rietzschel in Germany on April 6, 1984. When this judgment proved uncollectable against the then bankrupt Rietzschel, the Europeans brought this action against Salazar to recover the funds. After trial of the matter, at which Salazar testified live and Kok’s deposition was introduced, the trial court granted judgment in favor of Salazar. This appeal followed.
The plaintiffs urge two grounds for relief here. They first contend that the trial judge erred in not finding that Salazar had negligently breached his fiduciary duty towards them in wiring the money to Rietz-schel without having actually seen the car. Their second argument is that even if Salazar was not negligent, he should share in the loss because the venture was a partnership. On the facts before us, neither proposition is tenable.
As to negligence, there is no evidence to contradict Salazar’s testimony that he informed Jouster about the proposed transfer of money to Rietzschel, and that Jouster approved the transfer, ostensibly after consultations with Kok and Beke. Although Kok testified in his deposition that he knew nothing of the specifics of the deal with Rietzschel, he also stated that he agreed at the Brussel’s meeting to Salazar’s using the original capital to purchase a second car. He also stated that the negotiations for purchase of the second car were conducted between Jouster and Salazar. Nothing in this testimony contradicts Salazar’s version of events, particularly in regard to Jouster’s agreement that the funds be wired to Rietzschel. Because Jouster was handling the negotiations for the European group with Salazar, and because he authorized transfer of the funds, Salazar did not breach any fiduciary duty arising out of his having the funds in his bank when he transferred them.
Plaintiffs further urge, however, that Salazar was an experienced automobile dealer, while they were not, and because of his superior knowledge he was negligent in putting their funds at risk by buying an undelivered and unseen car. Again, the facts show otherwise. Salazar’s uncontroverted testimony was that the practice of wiring money to dealers for undelivered cars was the typical way such matters were handled in Germany. He also testified that at the time of the present transaction Mercedes cars were difficult to find, and that if the purchase money was not sent to the dealers promptly, they would sell the cars to others. Further, Salazar had previously purchased a car from Rietzschel with no problems. At the time of this transfer of money, he had recently put up a deposit for a Porsche with him, and also wired $2,000 of his own money, along with that of the European group, to make up the purchase price for the anticipated Mercedes. Finally, the European group had themselves purchased the first car from Sull, sight unseen, by simply sending him the money. On these facts, there is nothing to indicate that Salazar acted other than as a prudent businessman in the entire transaction.
While it might be said that Salazar, because of his experience, had a duty to protect the European group from known unscrupulous or questionable dealers, or from undertaking suspect types of transactions, in this case he simply did not breach any such duty. He had done business with Rietzschel in the past successfully and had no reason to even suspect that this dealer was in financial trouble, or otherwise unreliable. He handled the transaction in a manner customary in the usual manner trade, and one moreover which the European group had itself used to purchase the first car from Sull. Because Salazar breached no duty owed to his business associates in the entire transaction he cannot be liable for any damages suffered by them because of the actions of Rietzschel, and we so rule. See Harris v. Pizza Hut of La., Inc., 455 So.2d 1364 (La.1984).
Plaintiffs’ second proposition is that the venture was a partnership, and therefore that all partners must share in the loss. In Marie v. Savoie, 470 So.2d 367 (La.App. 5th Cir.1985), the court reiterated the rule that for a business enterprise to be considered a partnership, it must meet three criteria, one of these being that the *1301 property of the enterprise must form a community of goods in which each party has a proprietary interest. In the present case, that criterion is lacking. The contract and the testimony of Kok and Salazar, all show conclusively that Salazar was never to acquire any common proprietary interest in the automobiles being imported. Rather, the agreement was that the Europeans would purchase and ship automobiles to the U.S., and Salazar would sell them. The contract further specified that if Salazar were unable to sell a vehicle within 30 days of receipt, he was obliged to surrender it to Kok or his agent on demand. The agreement is thus clear that the cars would be owned by the European group until sold, and that Salazar was not to acquire any ownership interest in any of these vehicles.
While it is true that Salazar advanced some $2,000, of his own money for purchase of the second car, that advance did not transform the agreement into a partnership. The facts show rather that Salazar put up these funds so that the purchase from Rietzschel could be concluded without a delay which might have resulted in the car being sold to someone else. We therefore hold that no partnership existed between the parties, and that Salazar is not liable to the European group under the laws pertaining to such business entities.
For the foregoing reasons, the judgment of the trial court is hereby affirmed.
AFFIRMED.