455 So.2d 1364 (1984)
Henry HARRIS, et al.
v.
PIZZA HUT OF LOUISIANA, INC. and St. Paul Fire and Marine Insurance Company.
No. 84-C-0304.
Supreme Court of Louisiana.
September 10, 1984.
*1366 Mack E. Barham, Robert E. Arceneaux, Barham & Churchill, John S. Keller, Charles R. Jones, New Orleans, for plaintiffs-applicants.
Sylvia E. Taylor, Reserve, for plaintiffs.
Charles A. Boggs, Chester A. Fleming, III, Boggs, Loehn & Rodrigue, New Orleans, for defendant-respondent.
WATSON, Justice.
During an armed robbery of a Pizza Hut, one patron was killed and another injured by a shotgun blast. A jury concluded that the harm resulted from the negligence of the Pizza Hut's security officer and awarded substantial damages. The court of appeal reversed, finding that the security officer's actions were not a cause of plaintiffs' damages. Harris v. Pizza Hut of Louisiana, Inc., 445 So.2d 756 (La.App. 4 Cir.1984). A writ was granted. 447 So.2d 1066 (La., 1984). The novel question is whether the defendant restaurant is legally responsible for plaintiffs' damages by reason of the negligence of its security guard, when the physical injuries were inflicted by a shotgun fired by an armed robber.

FACTS
On the evening of March 17, 1979, Veletter Harris,[1] a daughter, Zina Harris, two of her other children, and a friend were at the Port Street Pizza Hut on the corner of Claiborne Avenue. The restaurant, in a New Orleans high-crime neighborhood, is operated by Pizza Hut of Louisiana, Inc., and insured for liability by St. Paul Fire & Marine Insurance Company. At the time, it had five rows of tables with a salad bar in the front of the center row. The Harris party took seats at the next-to-the last table in that middle row. At the customers' entrance, located on the side of the building adjacent to a parking area, there was a partition which created a short hall and screened the door.
At approximately 9:10 P.M., an armed and uniformed security guard, Officer Maxie Walker of the New Orleans Police Department, arrived at the Pizza Hut where he was scheduled to work from 9:00 P.M. until 1:00 A.M. He had come directly from a Schwegmann's Supermarket where he had performed similar duties from 2:00 P.M. until 9:00 P.M. The practice of working as security officers was not unusual among New Orleans policemen. Walker was substituting at the Pizza Hut for Officer Ralph Himel but had worked there in the past. The Pizza Hut personnel had never specifically instructed him as to his duties.
Immediately upon arriving at the restaurant, Walker fixed himself a large salad, obtained a soft drink and took a seat at the first table in the second row adjacent to the salad bar. After completing his salad, he remained at that table finishing his soft drink and conversing with young Dwayne *1367 Thomas[2] about the book which Walker had with him. The entrance was to Walker's left. Walker's view of the door and the view of his table by those entering was obscured by the partition located just inside the door and running parallel to the counter.[3]
Despite the many witnesses in the crowded restaurant, the ensuing sequence of events is not entirely clear. About 10:00 P.M., a masked robber carrying a hand gun entered the main door without seeing Walker and went to the cash register at the serving counter. Walker was looking down adjusting his belt. The first robber "definitely wasn't looking my [Walker's] way when he walked in."[4] Thomas alerted Walker, who looked up and reached for his revolver, whereupon another robber walked past the end of the partition and pointed a sawed-off shotgun at Walker saying "don't move, pig".[5] Although Officer Walker had a hand on his weapon, the robber knew he had the "ups him."[6] Walker moved to his right, and Thomas dived to the floor behind Walker's chair.[7] The shotgun fired. Ronald Ailsworth, who is serving a life sentence at Angola for second degree murder said he fired the shotgun in response to a shot from Walker. Although there was some corroboration for Ailsworth's account, the witnesses closest to the scene, including Walker and Thomas, agreed that the shotgun fired first.[8] The blast wounded Walker in the shoulder, hit Zina Harris in the head, and killed Veletter Harris, the latter two being in the line of fire behind Walker. Walker fell to the floor, pulled his gun, killed one of the robbers and wounded another. A third armed robber escaped and was never apprehended.[9] According to Ailsworth, the robbers were not expecting a guard at the *1368 Pizza Hut; he had been told none would be present.
The expert testimony was that the primary purpose of a security guard is deterrence of crime by a visible presence. Plaintiffs' expert emphasized that essentially a security guard should not eat on duty; he should be visible to people outside by sitting on a stool near the door or being on a walking patrol. Defendants' expert said the highest degree of security would consist of an armed uniformed police officer in plain view. When pressed about which table a guard should take if he ate, the experts disagreed about whether Walker's position in the restaurant was an appropriate selection. According to plaintiffs' expert, Walker's position in the restaurant was very poor from a security aspect. Defendants' expert testified that Walker's seat was the best place for a security guard to sit and eat a salad. One expert said that a guard temporarily off duty for eating or toilet purposes should be in an obscure place because there is no deterrence during that period of "down time". All the experts agreed that an officer with a shotgun pointed at him should not move, his only option being to follow the instructions of the man with the shotgun. The police owe an obligation to innocent citizens and may not open fire if it creates a substantial risk of harm to innocent by-standers. When officer Walker moved, he acted contrary to the experts' opinions of what his trained reaction should have been. According to the testimony, the probability is that no one will get shot in a commercial robbery if there is no resistance. However, officer Walker testified that if a gunman caught him by surprise, he would still "try to pull my gun."[10] Ted Brister, an expert in the use of deadly force by police officers, stated that he had trained Maxie Walker at the New Orleans Police Academy. He agreed with other experts that if Walker had gone for his weapon, he would have invited the firing of the shotgun and escalated the violence. Prior robberies of the Pizza Hut had been "quiet" ones.[11]
In answers to interrogatories, Pizza Hut submitted the report of its district manager which stated that the store had been robbed or burglarized more than twenty times. It was robbed on November 11, 1978, and again on November 19, 1978, but was not robbed again until March 17, 1979, possibly because security officers were utilized beginning on November 24, 1978.
Mark Osborne testified that the records of the New Orleans Police Department indicated seven previous instances of criminal activity at the Pizza Hut from January, 1976, to the date of the fatal shooting. Most were armed robberies, which occurred between the hours of 9:00 and 10:00 P.M.
COURT PROCEEDINGS
Suits were filed by the survivors of Veletter Harris and also on behalf of Zina Harris. The pleadings, as amended, alleged some twenty claims of negligence on behalf of Pizza Hut and its employees, including the security guard, Maxie Walker. As tried and argued, the claims of negligence are essentially three, namely that: (1) the security guard was negligent in drawing his gun and firing it before the shotgun blast, (2) in moving and provoking the robber to fire the shotgun, and (3) in being seated inside the restaurant, being inattentive, visiting with other employees and perusing a book, rather than being at the door of the restaurant or outside the door of the restaurant in a position where he would have been seen by potential robbers and deterred the crime.
The jury was given interrogatories which asked whether Walker was negligent, whether his negligence was a cause-in-fact of the plaintiffs' damages and, if so, the amount of damages sustained.
The jury replied affirmatively to the first two questions. Zina Harris, the wounded daughter, was awarded $50,000 for her *1369 physical injuries. Six of the Harris children, including Zina, were awarded $50,000 each for the death of their mother. Two of the children were awarded $65,000 and one was given $80,000. As to Henry Harris, the estranged husband of Veletter Harris, the jury found no damages. Appropriate judgments were signed by the trial court, and the defendants appealed to the Court of Appeal, Fourth Circuit.
The court of appeal concluded that officer Walker did not fire first, that he did not move after being ordered not to do so by the robber with the shotgun, and that the robber fired without provocation. The court of appeal held:
"Because we do not find that the actions of Officer Walker, either prior to or during the robbery, can form the basis for a finding of liability for plaintiffs' harm, we must reverse the judgment of the trial court." 445 So.2d 756 at 762-763.

PERTINENT LAW FROM OTHER JURISDICTIONS
This court has not previously decided the questions presented.[12] However, other jurisdictions have considered similar problems.
The issue of a business establishment's liability to a patron for criminal assault by a third party is discussed in Banks v. Hyatt Corporation, 722 F.2d 214 (5 Cir., 1984). Although Banks dealt with an innkeeper's liability, any business which invites the company of the public must take "reasonably necessary acts to guard against the predictable risk of assaults." 722 F.2d 214 at 227. Also see Walkoviak v. Hilton Hotels Corp., 580 S.W.2d 623 (Tex.App., 1979). A business proprietor owes a duty to those entering its premises to provide a reasonably safe place. Butler v. Acme Markets, Inc., 89 N.J. 270, 445 A.2d 1141 (1982). In Butler security was also being furnished through the services of an off duty police officer, and a jury verdict for plaintiff was affirmed despite the lack of expert testimony as to the appropriate standard of care. As in this case, there was a question of placement involved and Butler holds that a security guard who is not properly positioned to respond to foreseeable attacks can furnish a basis for liability.
A duty of protection which has been voluntarily assumed must be performed with due care. Mullins v. Pine Manor College, 389 Mass. 47, 449 N.E.2d 331 (1983). Whether violence which results from the breach of such a duty is reasonably foreseeable and a cause-in-fact of an injury to a third person is a jury question. Lay v. Munford, Inc., 235 Ga. 340, 219 S.E.2d 416 (1975), reversing Munford, Inc. v. Lay, 134 Ga.App. 642, 216 S.E.2d 123 (1975). Also see Gomez by and through Munoz v. Ticor, 145 Cal.App.3d 622, 193 Cal.Rptr. 600 (1983). "An expert's opinion based on facts in evidence is sufficient proof of causation." Mullins, supra, 449 N.E.2d 331 at 339. A business which undertakes to hire a security guard to protect itself and its patrons is liable for physical harm which occurs because of negligence on the part of that guard. Tucker v. Sandlin, 126 Mich.App. 701, 337 N.W.2d 637 (1983). When a security guard fails to act in accordance with established policies and procedures and that negligence is a substantial factor in bringing about injury to a third party, it can support a jury finding of causation. McClure v. Allied Stores of Texas, Inc., 608 S.W.2d 901 (Tex., 1980).
DUTY-RISK ANALYSIS:
Louisiana has for some time employed the duty-risk analysis to determine *1370 legal responsibility in tort claims.[13]
The pertinent inquiries are:
I. Whether the conduct of which plaintiff complains was a cause-in-fact of the harm;
II. Whether there was a duty on the part of the defendant which was imposed to protect against the risk involved;
III. Whether there was a breach of that duty; and
IV. Damages.
I. CAUSE-IN-FACT:
The jury found, in answer to a specific interrogatory, that officer Maxie Walker's negligence was a cause-in-fact of plaintiffs' harm. Dean Prosser has wisely observed that the determination of cause-in-fact can be made as ably by the average citizen on a jury as by the most learned of judges. This thought is part of the Louisiana tradition which gives great deference to the findings of the trier of fact, be it jury or judge. Canter v. Koehring Company, 283 So.2d 716 (La., 1973); Arceneaux v. Domingue, 365 So.2d 1330 (La., 1978), on remand 370 So.2d 1262 (La.App. 3 Cir.1979), writ denied 374 So.2d 660 (La., 1979).
However, a troublesome problem illustrated by the present case is that the reviewing court often does not have the advantage of knowing exactly what act or omission the jury found to be a cause-in-fact.
As noted above, the charges of negligence against Walker boil down to the claims that he shot first; that he failed to be in a proper position, at or near the door, as a visible deterrent to potential armed robbers; and that, when confronted with the shotgun, he moved provoking the robber to fire the fatal shot.
If the jury found that the evidence supported the allegation that Walker shot first, the conclusion would be simple and direct that he instigated gun play inside a crowded restaurant and the liability of defendants would be clear.
Defendants argue and the court of appeal found that the record does not support the theory that Walker shot first. Indeed, counsel for plaintiffs do not argue this point strenuously and the record, while it contains some evidence that Walker fired first, cannot be said to fairly preponderate toward that conclusion. If the question of the first shot were the only one under review, the court of appeal judgment should be affirmed.
However, there were various derelictions of duty by Walker as a security guard prior to the shooting.[14] The jury could well have found that the officer's conduct was a cause-in-fact of the resulting harm. There is considerable expert testimony concerning security guards. The experts all agree that officer Walker should have maintained a high visibility. Common-sense confirms the lay and expert testimony; potential robbers who see an armed and uniformed police officer guarding the door of a restaurant are unlikely to attempt criminal activity at that location.
The Pizza Hut was in a high crime area. Although Walker had no actual notice that 9:00 to 10:00 P.M. was a peak danger period, the Pizza Hut's knowledge of this fact would be imputed to him. A robbery was reasonably forseeable and more probable than the ordinary random crime. There was evidence that the hiring of a security guard had resulted in an interruption of criminal activity and that this particular armed robbery would not have occurred if the robbers had known that a security guard was present. The jury may well have concluded that the security guard *1371 who was hired to protect the patrons and property of the restaurant was negligent in carrying out his duties by failing to station himself at the door or just outside the door of the restaurant.
There is also the matter of the guard moving in the face of the shotgun. While the record shows that the Thomas youth moved just prior to the blast, the evidence also preponderates to the effect that officer Walker moved at this point. Walker's own statements and testimony support this conclusion. While it is difficult to fault a man in Walker's perilous situation, there was certainly sufficient evidence from which a jury could have concluded that Maxie Walker's reaction to the leveled shotgun was negligent and resulted in the death of Veletter Harris and the injury to Zina Harris.
Therefore, there is a view of the evidence on which the jury could have found conduct by Walker which was a cause-in-fact of the shooting.
It is true that the shooting was apparently an intentional act on the part of the robber. However, applying the "but for" test, one concludes that, but for Walker's lack of visibility, the robbers would not have entered the Pizza Hut, and, but for Walker moving when ordered not to do so by the robber, the shotgun probably would not have been fired and the harm would not have resulted. It follows that the court of appeal was wrong in substituting its judgment for that of the jury as to Walker's conduct being a cause-in-fact.
II. DUTY:
The next question is whether there was a duty owed to the Harris' by the defendant Pizza Hut which protected against the risk involved.
Duty is a question of law. Generally, there is no duty to protect others from the criminal activities of third persons.[15] Restatement of Torts Second, § 314 (1965); Prosser Law of Torts, § 33 at pp. 173-174 (4th Edition, 1971). However, when a duty to protect others against such criminal misconduct has been assumed, liability may be created by a negligent breach of that duty. Restatement of Torts Second, § 324A; Prosser, supra, pp. 174-176. Respondents correctly point out the deficiencies of the interrogatories propounded to the jury by the trial court. The interrogatories inquired only whether Walker was negligent, whether his negligence was a cause-in-fact of the injuries, and the amount of the damages. The trial court should have instructed the jury as to the duty owed by the Pizza Hut to its patrons and should have inquired whether there had been a breach of that duty.
The duty was to provide the patrons with a reasonably safe place to purchase and consume food.
The circumstances establish that this armed robbery was foreseeable and more than a mere possibility. The guard was there to prevent financial loss to the restaurant, assure the patrons that the premises were safe, and otherwise create what turned out to be an illusory impression of security. It is unnecessary to decide how many prior criminal acts create a duty to hire a private guard because the Pizza Hut had recognized that the risk of crime on these premises was sufficiently foreseeable to require special protection. Whether this Pizza Hut had a duty to hire security guards is irrelevant. There was a security guard. Since the Pizza Hut was furnishing security through the services of a trained police officer, the question is whether the security guard breached his duty by adequate measures to protect those on the premises. Thus, the question is not whether the Pizza Hut was required to have a security guard on the premises, but whether its security guard breached the applicable *1372 standard of care.[16] The Pizza Hut had already accepted the duty of hiring a security guard on the date of the shooting between the hours of 9:00 and 1:00 A.M. Once employed, the security guard was under a duty to discharge his obligations in a reasonable and prudent manner, and especially not to contribute by his act or omission to an escalation of violence during an armed robbery which resulted in patrons being wounded and killed.
Therefore, while it would have been preferable for the trial court to have charged the jury as to what duty Pizza Hut had toward its patrons, the duty existed as a matter of law and the third inquiry is whether there was a breach by negligent conduct.
III. BREACH OF DUTY:
The inquiry is whether the duty was violated,[17] but there is also a requirement that the breach must be negligent, substandard or blameworthy.[18] The answer to this question is intertwined in the consideration of causation. Where a duty has been assumed to provide a security guard, it is necessary to decide whether that guard was acting with reasonable care in preventing the harm incurred.
Walker's breach of the duty owed to the patrons is established by the record. Walker was hired to deter crime; he was not hired to take a "salad break" during the period of greatest danger at the restaurant, that is, between 9:00 and 10:00 P.M. He was not hired to sit inattentatively among the customers; he was not hired to converse with Thomas; and he was not hired to bring or read books on the job. Failure of Walker to be alert and visible at the time of the crime constituted a breach of his duty to patrons of the Pizza Hut. Further, the expert testimony established that his movement in the face of the shotgun was a breach of his duty to others in the restaurant.
IV. ACTUAL DAMAGE:
That the plaintiffs suffered actual damage is not open to question. The parties have not argued quantum and the amounts awarded appear to be within the discretion of the jury.
Therefore, for the reasons assigned the judgment of the court of appeal is reversed, and the judgment of the trial court is reinstated.
REVERSED; TRIAL COURT JUDGMENT REINSTATED.
MARCUS, J., dissents.
DENNIS, J., concurs with reasons.
BLANCHE, J., dissents and assigns reasons.
DENNIS, Justice, concurring.
I respectfully concur.
As the amicus briefs of the Louisiana Restaurant Association and the Louisiana Trial Lawyers Association indicate, there is *1373 need to stress that this is an ordinary negligence case. Although the majority's holding is based on the ordinary negligence of the security guard, its dicta discusses other theories unnecessary to a decision in this case. Because I am not prepared to adopt those theories as being generally applicable to restaurants in this state, I concur on the basis of a negligence theory.
Pizza Hut conceded that the security guard was its employee who was acting in the scope and course of his employment at the time of the robbery. T.R. vol. 5, p. 17. There was ample evidence from which the jury reasonably could have found that the security guard's actions and omissions created an unreasonable risk of harm to the customers: The guard chose the peak robbery hour to sit with a salad and book behind a partition socializing with customers (T.R. vol. 5, pp. 31-55); he inattentively allowed the robbers to enter and get the drop on him (T.R. vol. 5, pp. 79-80; 84-85); he moved and provoked gunfire by the robbers (T.R. vol. 6, pp. 39-43; pp. 165-168). The jury also reasonably could have found that but for the guard's negligent acts there probably would have been no gunfire into the customer area fatally wounding the plaintiffs' deceased.
One unusual feature of this negligence case is that the restaurant had been the scene of several previous armed robberies, four of seven during the very hour in which the security guard was relaxed and inattentive. Thus, during this peak robbery period, the guard was held to a very high standard of care, with which he obviously failed to comply. Moreover, this is not a case in which a security guard simply was unable to protect customers from criminal activity but one in which the guard's negligence was of such magnitude that he created a greater risk of harm to customers from criminal conduct than would have existed had there been no security guard at all.
BLANCHE, Justice (dissenting).
In granting recovery to these plaintiffs, the majority holds that a restaurant owner who hires a competent professional security guard is negligent unless the guard stations himself at a position outside the restaurant where he may be clearly visible to all potential armed robbers. This rule of law is solidly grounded in the court made infallible premise that all would-be armed robbers will unquestionably retreat upon seeing a single security guard stationed outside the restaurant. The majority further holds that it is negligent for a security guard while on duty at a restaurant to eat at a table inside the restaurant because while the guard is inside, potential armed robbers are unable to clearly view the security guard until after they enter the premises. This rule evidently requires guards hired by a business to be on duty without a break because one never knows when a robbery may occur. Finally, the majority concludes that a security guard, who moves no matter how slight, after a shotgun is placed in his face and warned not to move by an armed robber, is a cause-in-fact of all parties injured when the gunman intentionally fires his weapon at him. This rule would require the guard to remain motionless during the perpetration of an armed robbery and would find him negligent if he either acts in his own interest of self-preservation or in consequence of his duty to prevent the robbery.
Considering the unpredictability of human reaction under such stress, the rule really makes the security guard the insurer of everyone's safety during the course of an armed robbery. If he moves and someone is injured, he will be responsible for inciting violence, and if he freezes and does nothing to prevent the robbery or protect the customers and someone is injured, he will also be negligent for failing in his duty.
Pizza Hut ought to be able to hire a competent security guard for the safety of its customers, without becoming an insurer of their safety. Anderson v. Clements, 284 So.2d 341 (La.App. 4th Cir.1973). Nonetheless, this is the result reached here, even though Pizza Hut satisfied its duty to provide reasonable safety for its *1374 customers by hiring a competent, professional security guard. This guard was in fact later given a written commendation and a medal of merit for the manner in which he performed during the robbery. Furthermore, the sole legal cause of the injuries to plaintiff was not the fault of the guard. That cause was the intentional conduct of the gunmen. It is highly speculative that Officer Walker's presence whether outside or inside the restaurant would have prevented this robbery which was planned several days in advance. Officer Walker had a duty to take reasonable care for the safety of the Pizza Hut patrons. He did not breach that duty by provoking the robber to shoot at him. To the contrary, Officer Walker satisfied his duty to the highest degree.
Therefore, I respectfully dissent.
NOTES
[1] Although Ms. Harris' name is spelled Valetter in the pleadings and Valletter in the court of appeal opinion, her certificate of marriage says "Veletter", and she signed her name as "Veletter" on the birth certificates of her children.
[2] Dwayne Thomas was a casual employee of the Pizza Inn but was not in the course of his employment at this time.
[3] Photograph D-3 indicates that the partition was solid up to about shoulder height and from there to the ceiling was composed of wooden lattice work.
[4] Vol. V, p. 129.
[5] Vol. IX, p. 47.
[6] Vol. VI, p. 104.
[7] The court of appeal erred in saying: "Officer Walker did not move ... until after the shotgun was fired." 445 So.2d 760. The weight of the evidence is to the contrary. At trial, Walker first testified that he did not move after the robber with the shotgun ordered him to remain still, but his prior testimony was read to the jury wherein he said he was "just kind of moving to the right real fast." (Vol. V, p. 118) Officer Walker explained this by saying that he may have been moving "ever so slightly to the right." (Vol. V, p. 122) He then clarified these two statements by admitting that he did move "ever so slightly to the right" seconds after the subject with the shotgun told him not to move. (Vol. V, p. 123) At trial, Thomas said Walker moved slightly to the right out of the line of fire. In connection with the criminal prosecution of Ronald Ailsworth on January 24, 1980, two years prior to these proceedings in November of 1982, Thomas stated as follows:

"Maxie moved and the guy shot." (p. 65, Harris # 4)
And:
"Q. The man said, `Don't move, but officer Walker did, in fact, move and that's when the shotgun went off?
"A. Yes, sir.
"Q. But for five seconds he held the shotgun there and he did not shoot?
"A. Yes, sir.
"Q. He only shot after officer Maxie Walker started to move?
"A. Yes, sir." (pp. 76-77, Harris # 4)
[8] Two customers, Reshell Johnson and Walter Joseph Reddick Jr., both said Walker fired first. Several others testified to the contrary. There was also evidence that Herbert Sentino, rather than Ailsworth, carried the shotgun. Sentino was killed during the robbery and his body was found outside the door with the shotgun near one foot. A .25 caliber pistol was also found outside the door of the Pizza Hut. According to Ailsworth, he was carrying the shotgun before he dropped it outside the door and Sentino had the pistol.
[9] Many of the witnesses only saw two of the three masked armed robbers. One went to the back room where he confronted the assistant manager and two other employees. According to Ailsworth, he was the third armed man to enter the Pizza Hut and he did not understand how his two confederates had missed seeing the policeman. Walker thought the robber with the shotgun was the second one to enter the restaurant, and the third one "had to have come in behind number 2, the guy with the shotgun." (Vol. V, p. 84)
[10] Vol. V, p. 21.
[11] Depo., Denise Jackson, assistant manager, p. 43.
[12] The court of appeal relied principally on Pennington v. Church's Fried Chicken, Inc., 393 So.2d 360 (La.App. 1 Cir.1980) and Roberts v. Tiny Tim Thrifty Check, 367 So.2d 64 (La.App. 4 Cir.1979). Pennington held that a fast food store was not required to provide a security guard or warn against the possibility of purse snatching; Roberts held there was no liability by a convenience store when a customer was killed who undertook to fight with armed robbers. These cases differ from the present matter in that the claims of negligence here are against a security guard hired to protect the patrons.
[13] See Crowe, "Anatomy of a Tort", 22 Loy.L. Rev. 903; Robertson "Dialogues on Hill v. Lundin", 34 La.L.Rev. 1; Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); PPG Industries, Inc. v. Bean Dredging, 447 So.2d 1058 (La., 1984).
[14] It should be noted that officer Walker conducted himself bravely and heroically once the shooting started. The police officers' awards committee gave him a written commendation and medal of merit.
[15] Restatement of Torts, Second, § 314 (1965) provides:

"The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action."
See also Prosser Torts, § 33 at 173-174.
[16] Amicus, the Louisiana Restaurant Association, suggests to the court that a decision for plaintiffs would impose on every restaurant in Louisiana the duty to provide a security guard. The issue of whether a restaurant which had suffered a large number of armed robberies and possibly injury to patrons would come under such a duty is left for decision at another time because here Pizza Hut had concluded that it was necessary for protection of its property and its patrons to hire a guard.

Amicus chiefly argues what has been called by Professor Crowe (supra, footnote 13) as the "economic" factor entering into the decision of whether there is a duty. In other words, they are suggesting that having to provide a security guard would place an impossible economic burden on the restaurants of the state. By recognizing the duty to provide a safe restaurant, this court is not declaring that all restaurants must have security guards or that an unbearable economic duty must be borne by the restaurants of the state. Indeed it is common knowledge that there are many restaurants which do not require more protection than can be given by the duly constituted police authorities; on the other hand, it is obvious, particularly in New Orleans, that many restaurants feel the need for guards to reassure their patrons and protect their property.
[17] See Crowe, supra, 22 Loy.L.Rev. 903 at 912.
[18] See Robertson, supra, 34 La.L.Rev. 1 at 22.