544 So.2d 1314 (1989)
Georgia Jampierre JONES
v.
SCHWEGMANN GIANT SUPER MARKETS, INC., et al.
No. 89-CA-0001.
Court of Appeal of Louisiana, Fourth Circuit.
May 25, 1989.
*1315 Raymond C. Burkart, Jr., New Orleans, for plaintiff.
Gary T. Breedlove, Blue, Williams & Buckley, Metairie, for defendants.
Before SCHOTT, C.J., and LOBRANO and ARMSTRONG, JJ.
ARMSTRONG, Judge.
Plaintiff, Georgia J. Jones, instituted this action against defendants, Schwegmann Giant Super Markets, Inc. and Betty T. Sanders. The trial court rendered judgment in favor of plaintiff and against Ms. Sanders, but dismissed her suit against Schwegmann's. Plaintiff now appeals from that part of the judgment dismissing her suit against Schwegmann's. We affirm.
On Saturday evening, February 13, 1986, plaintiff went shopping for groceries at a Schwegmann's super market located at 5300 Gentilly Road in New Orleans. Accompanying her was her husband, Johnny Jones, and a friend, David Beaulieu. The three proceeded to a checkout line and plaintiff positioned her shopping basket directly behind Ms. Sanders. There is some conflicting testimony about what happened next, but plaintiff and Ms. Sanders began arguing. The argument appears to have been instigated by Ms. Sanders. At some point Ms. Sanders hit plaintiff in the head with a can of peas. Plaintiff instituted this action against Schwegmann's claiming its employees failed to take proper steps which allegedly would have resulted in a security officer intervening in the dispute before the blow was struck.
Plaintiff and her husband testified at trial, and the deposition of David Beaulieu was introduced in evidence. All three essentially related the same facts. According to the three, Ms. Sanders requested that her daughter be allowed to check out her basket of groceries behind her and ahead of plaintiff. Plaintiff replied that her daughter would have to wait in line like everyone else. Ms. Sanders subsequently began talking in a haranguing manner about plaintiff's refusal to let her daughter go ahead of her.
Mr. Jones and Beaulieu left at some point to pick up fish at the seafood counter. Mr. Jones said when they left, his wife and Ms. Sanders "were constantly talking," but not arguing. Beaulieu said the arguing began ten minutes before they left for the seafood counter. Mr. Jones said that he and Beaulieu were gone about ten or fifteen minutes, "at the most." When they returned, he said plaintiff and Ms. Sanders were arguing; according to Beaulieu, they were still arguing. Apparently, only moments later, Ms. Sanders struck plaintiff with the can of peas.
Plaintiff remembered that a plainclothes security officer came on the scene almost immediately after the incident. However, she did not hear a call for security go out over the P.A. system; neither did Mr. Jones or Beaulieu. Mr. Jones testified that he didn't see a security officer until "maybe about ten minutes after" the blow was struck. Beaulieu recalled that a security officer appeared after the plaintiff was struck. He testified that the security officer "said he was standing at customer service and he said he thought they [plaintiff and Ms. Sanders] were just talking."
Plaintiff testified that the argument lasted fifteen or twenty minutes. Beaulieu estimated the duration as twenty minutes. Mr. Jones didn't give a specific duration but the thrust of his testimony was that the talking and arguing, from the onset to the blow being struck, lasted fifteen or twenty minutes. Plaintiff said that while they argued the cashier, having stopped checking groceries, was leaning back with her arms folded, watching them; Mr. Jones and Beaulieu testified similarly. Plaintiff and Mr. Jones further testified that they did not observe the cashier attempt to call for a security officer or notify anyone of the dispute.
Daneesa Cheatham was the cashier checking out Ms. Sanders in line number twenty-five when the argument and battery occurred. According to Ms. Cheatham, the argument began after she asked plaintiff to move Ms. Sanders' grocery basket *1316 out of the way and pull hers up to the checkout counter. She asked plaintiff to do this because she had finished checking out the person who had been in front of Ms. Sanders, and Ms. Sanders had walked away from her basket. Ms. Sanders happened to return at this time, and this, according to Ms. Cheatham, was when the arguing began. She said she immediately notified her supervisor to signal for a security officer. Her supervisor "ran" to the supervisor's desk and sent out the code for a disturbance over the P.A. system. Ms. Cheatham said a security officer responded right away, but by then Ms. Sanders had struck the plaintiff. Ms. Cheatham estimated that a total of five minutes elapsed during which everything described took place. It appears that during this five minute period Ms. Sanders left her basket and returned, argued with plaintiff, and struck her.
Thelonius Dukes was the Assistant Chief of Security at this particular Schwegmann's on the date in question. He testified that he heard the disturbance call and responded immediately. He was the first security officer to arrive on the scene, but this was after Ms. Sanders had struck plaintiff. Dukes testified that Schwegmann's security officers have a duty to deter shoplifting and "protect customers." On the day in question two uniformed security officers were assigned to work inside of the store, along with three plainclothes officers. One uniformed officer was assigned to the front checkout area. Dukes said he was required to keep someone on the "front line" at all times.
The duties of the security officer assigned to the "front line" entailed walking from one end of the checkout area to the other. Dukes said "twice would be a lot" for serious disputes to occur between customers in checkout lines. Although he couldn't estimate how many, he said non-serious incidents also occur. According to him, the proper procedure to be followed in such a case is for the cashier to notify her supervisor, who in turn notifies customer service, who then pages a security officer.
Jaime Parellada was the store manager for this particular Schwegmann's. He said that no disciplinary action was taken against any employee because of their response to this incident. He also said he had never had any problem with Ms. Cheatham as a cashier. He confirmed that there is supposed to be a uniformed security guard at the front of the store.
Based upon this evidence the trial court rendered judgment in plaintiff's favor and against Ms. Sanders. The court further rendered judgment in Schwegmann's favor and against plaintiff, dismissing her suit against it. No reasons for judgment were given by the trial court.
On appeal plaintiff claims that the trial court erred in dismissing her suit against Schwegmann's. She claims Schwegmann's was at fault because it assumed a duty to protect store patrons such as herself when it hired security officers to patrol the front checkout area, and its security officer breached his duty by not being in his assigned area and failing to intervene in a "twenty minute dispute." She also claims the cashier was negligent because she allowed the argument to continue for "twenty minutes" without notifying her supervisor or a security officer.
Plaintiff relies heavily on the decision by the Louisiana Supreme Court in Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984). In Harris, the court employed the familiar duty-risk analysis to find that Pizza Hut was liable for the negligence of an off-duty New Orleans police officer hired to provide security at a fast-food restaurant.
Plaintiff goes through the duty-risk analysis and concludes that Schwegmann's was at fault. Under the duty-risk analysis a court must determine:
1. Whether the conduct of which plaintiff complains was a cause-in-fact of the harm;
2. Whether there was a duty on the part of the defendant which was imposed to protect against the risk involved;
3. Whether there was a breach of that duty; and
4. Damages.
Since the trial court gave no reasons for judgment it is not known whether it found that the conduct complained of was not a *1317 cause-in-fact of plaintiff's harm; whether it found there was no duty on the part of Schwegmann's to protect plaintiff against the risk involved; or, whether it found there had not been a breach of that duty. If the answer to one inquiry is in the negative, one need not proceed any further.
The testimony of plaintiff, Mr. Jones, and Beaulieu contradicted that of the cashier, Ms. Cheatham, as to some important facts. In reviewing this evidence we will apply the well-recognized standard of appellate review first set forth in Canter v. Koehring Company, 283 So.2d 716 (La. 1973), and later explained in Arceneaux v. Dominque, 365 So.2d 1330 (La.1978). Findings of the trier of fact, judge or jury, may not be disturbed on appellate review unless, (1) the record evidence does not furnish a sufficient basis for the finding, or (2) even though the evidence does furnish a sufficient basis for the finding, that finding is nonetheless clearly wrong. Since the trial court's factual findings are unknown our inquiry will be, "Could the trial court have found X ?" If we find that the trial court could have found X, and that finding would support the trial court's dismissal of Schwegmann's suit, then we must affirm the judgment of the trial court.
We find it necessary only to examine whether the conduct complained of was a cause-in-fact of plaintiff's harm. The inquiry is whether that conduct in any way contributed to the plaintiff's harm. See Crowe, "Anatomy of a Tort," 22 Loy.L. Rev. 903 (1976).
Plaintiff claims the failure of the cashier to notify a supervisor was a cause-in-fact of plaintiff's harm. However, the cashier testified that she notified her supervisor when the argument began. Plaintiff stresses that none of the other witnesses saw her do this. But, the other witnesses who would have seen this were plaintiff, her husband, and their friend. The trial court could have believed the cashier's testimony and found that she did notify her supervisor.
As to the length of time it took for her to do this, again, Ms. Cheatham said she did so when the arguing beganwhen Ms. Sanders returned to find plaintiff moving her basket at the cashier's direction. The trial court could have found that Ms. Cheatham notified her supervisor as soon as it became apparent there was a dispute. Thus, the trial court could have found that no conduct of Ms. Cheatham contributed in any way to plaintiff's harm. The record evidence furnishes a sufficient basis for such a finding and we are unable to say that such a finding would be clearly wrong.
Plaintiff also claims that another cause-in-fact of plaintiff's harm was the failure of the security officer assigned to patrol the checkout area, to notify his superior that he would be away from the front line, and/or his failure to observe and intervene in a dispute lasting some "twenty minutes." Plaintiff's argument here is based on the premise that, had a security officer been present in the front checkout area, he could have intervened in the argument and prevented Ms. Sanders from striking her.
The evidence simply does not establish by a preponderance that the security officer could have stopped Ms. Sanders from striking plaintiff. The incident occurred in checkout line number twenty-five. Had the security officer been patrolling the checkout area he could have been at checkout line number one when the argument began. It was a Saturday evening and the store manager testified that Saturday was the store's busiest day of the week. There was no evidence that the cashier could have attracted the attention of the security guard unless, perhaps, he had happened to be in the immediate vicinity of her checkout lane. There is no evidence that the women were creating a disturbance such as would have been noticed by anyone other than those nearby. Ms. Cheatham properly followed store procedure and notified her supervisor, who in turn paged security.
Officer Dukes said he responded immediately upon hearing the disturbance call over the P.A. system. His office, where he was sitting, was located some fifty feet from checkout line number twenty-five. There is no evidence that a security officer twenty-four lanes away, or even closer, could have responded any sooner.
The facts of the case at bar differ greatly from those in Harris, supra. In Harris *1318 a visible, armed, off-duty police officer would have acted as a deterrent to a would-be armed robber. Instead, the officer was seated at a table in the fast-food restaurant, a position that was, according to expert testimony, "very poor from a security aspect." This, the court found, could have been found to have been a cause-in-fact of the robbery and subsequent shootout in which an innocent bystander was killed. There is no evidence in the case at bar that a visible security officer, positioned as far as twenty-four checkout lanes away, would have deterred Ms. Sanders from, in a split second, picking up a can of peas and striking plaintiff in the head.
For these reasons we find that the trial court could have concluded that the temporary absence of a security officer from the front checkout area was not a cause-in-fact of plaintiff's harm. We are unable to say that such a finding would be clearly wrong.
Having determined that the trial court could have found that no actions or omissions by Schwegmann's employees or Schwegmann's itself were causes-in-fact of plaintiff's harm we need proceed no further with the duty-risk-analysis.
For the reasons assigned we affirm the judgment of the trial court.
AFFIRMED.