669 So.2d 599 (1996)
Bennon PERRIT, Jr. and Catherine Perrit
v.
BERNHARD MECHANICAL CONTRACTORS, INC.
No. 95 CA 1462.
Court of Appeal of Louisiana, First Circuit.
February 23, 1996.
Writ Denied April 26, 1996.
Brien J. Fricke, New Orleans, John B. Comish, Baton Rouge, for Plaintiffs-Appellants.
Joseph E. Juban, Daniel D. Holliday, III, Special Assistant Attorney General, Baton Rouge, for Defendant-Appellee.
Before WATKINS and FOIL, JJ., and TANNER, J. Pro Tem.[1]
THOMAS W. TANNER, Judge Pro Tem.
The plaintiffs, Bennon Perrit, Jr. and his wife, Catherine Perrit, appeal the granting of a summary judgment in favor of defendant, Louisiana State University (LSU). We have thoroughly reviewed the record and find no genuine issue of material fact regarding LSU's liability in this matter. Therefore, the trial court did not err in granting summary judgment, and that judgment is affirmed.

*600 Background Facts
In April, 1991, LSU contracted with Bernhard Mechanical Contractors, Inc. (Bernhard) in conjunction with a renovation project at the K-Wing of LSU's Medical School in Shreveport, Louisiana, for Bernhard to demolish the old air conditioning system and install a new system. Bernhard subcontracted with B & C Sheet Metal (B & C) to do the duct work for the project.
On October 15, 1991, plaintiff, Mr. Perrit, an employee of B & C, was engaged in the disposal of scrap and debris which accumulated as the old system was demolished. The debris was dropped through a hole in the floor of the mechanical tower in the four-story K-Wing. A system was established whereby workers on the second, third, and fourth floors communicated with the workers on the ground floor, via walkie talkies, and debris was dropped when the designated worker on the floor ascertained that the ground floor was clear and debris could be dropped safely. The debris was then gathered from this drop site by Mr. Perrit and other B & C employees on the ground floor, who hauled it to a dumpster. Mr. Perrit was injured when Russell Doucet, an employee of Bernhard, without warning, dropped a forty pound angle iron through the hole in the fourth story of the K-Wing, striking plaintiff, who was standing directly beneath on the ground floor, on the head.

Procedural Background
Mr. Perrit and his wife originally filed suit against Bernhard and its liability insurer. The Perrits later filed a supplemental and amending petition adding LSU, as owner of the premises, as a defendant. As statutory employer, Bernhard was entitled to tort immunity and was subsequently dismissed from the suit, leaving LSU as the sole remaining defendant. LSU then filed a motion for summary judgment, which was granted; this judgment forms the basis of this appeal.

The Appeal
The plaintiff argues that the trial court erred in granting the summary judgment when there exists a genuine issue regarding whether LSU voluntarily assumed a duty to protect the plaintiff, and further, that the trial court erred in making credibility determinations, evaluating testimony and weighing evidence, all of which are improper when considering a motion for summary judgment. The controversy involves certain actions taken by LSU employees during the project which resulted in the placement of barricades and rope around the area on the ground floor where debris was being dropped. Plaintiffs assert that by these actions, LSU assumed a duty to supervise and control the work being performed, and breached that duty by implementing an inherently dangerous debris disposal system at the worksite, which ultimately caused Mr. Perrit's injuries. LSU, on the other hand, maintains as principal, it is not liable for the torts of its contractor, and further, it denies that it assumed any responsibility for the safety of the workers on the project.
It is well settled in Louisiana law that a principal is not liable for the offenses an independent contractor commits while in the course of performing its contractual duties unless (1) the contractor is performing ultra-hazardous work or (2) the principal reserves the right to supervise or control the work. Crane v. Exxon Corporation, U.S.A., 613 So.2d 214, 219 (La.App. 1st Cir.1992). It is undisputed that LSU was the principal and Bernhard was the independent contractor for the project at issue in this matter. It is also undisputed that the project did not involve ultra-hazardous work. Therefore, LSU cannot be liable to the plaintiff unless it reserved the right to supervise or control the work being performed.
Whether a duty is owed to a person or a particular class of persons is a question of law. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, 1371 (La.1984). In making the determination of whether a principal retained supervision or control over the contractor, it is the principal's right to exercise control that is of primary concern, not the supervision and control actually exercised. Crane v. Exxon, Corporation, U.S.A., 613 So.2d at 220.
In support of its motion for summary judgment, LSU attached the contract between LSU and Bernhard; the subcontract *601 between Bernhard and B & C; the depositions of Charles Robinson and Ann Ford, both employed at LSU; the deposition of Jerry H. Hales, a B & C employee; and the deposition of Russell Doucet, the Bernhard employee who dropped the angle iron which injured Mr. Perrit. Section 3.3 of the contract between LSU and Bernhard, entitled "Supervision and Construction Procedures," provides in pertinent part as follows:
3.3.1 The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work....
3.3.2 The Contractor shall be responsible to the Owner for acts and omissions of the Contractor's employees, Subcontractors and their agents and employees....
Further, Section 10.1 of the contract, entitled "Safety Precautions and Programs" provides, in pertinent part:
10.1.1 The Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract.
Section 10.2 of the contract entitled "Safety of Persons and Property" also provides, in pertinent part:
10.2.1 The Contractor shall take reasonable precautions for safety of, and shall provide reasonable protection to prevent damage, injury or loss to:
.1 employees on the Work and other persons who may be affected thereby....
10.2.2 The Contractor shall give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss.
10.2.3 The Contractor shall erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent sites and utilities.
The contract clearly places the responsibility for all safety aspects of the renovation project on the Contractor, and nowhere in the contract is any of this responsibility or the right to control or supervise the work placed on the principal.
LSU also submitted the depositions of LSU's project engineer, Charles Robinson, and the director of the safety office at the Medical Center in Shreveport, Ann Ford, both of whom testified regarding LSU's participation in the renovation project. Ms. Ford testified that her duties as director of safety at the Medical Center were to oversee safety programs and provide a safe environment for employees, visitors and patients. When questioned specifically regarding the duties of LSU's safety office in construction projects, Ms. Ford testified that the safety office was involved in providing safety in construction projects if, and only if, the work involved hazardous materials; in all other cases, project safety was the sole responsibility of the contractor.
Regarding the K-Wing renovation project specifically, Ms. Ford testified that LSU had not assumed any responsibility for project safety nor had it voluntarily taken on any extra supervision or control over the project. She admitted that she had been notified by a concerned employee that the workers were throwing debris down to the ground floor, and that the area was unprotected. She further admitted that she immediately contacted Mr. Charles Robinson, the project engineer, and voiced her concern about the debris drop site and the danger it may pose to Medical Center employees as well as visitors and pedestrians around the K-Wing. She testified that she and Mr. Robinson viewed the debris disposal and agreed that it was dangerous. She said she instructed Mr. Robinson to contact the contractor and tell them to "do something differently." She was later contacted by Mr. Robinson who informed her that the contractor was putting up barricades around the debris collection site. When asked if LSU had originally participated *602 in the development of the debris disposal system, Ms. Ford stated, "We don't normally tell the contractor how to manage their project." When asked if LSU was aware of the system being used, she again testified, "That's the contractor's responsibility, until it impacts on our people."
LSU's project engineer, Charles Robinson, admitted that he conducted inspections of the worksite, on an almost daily basis, during which he spoke with the contractor and subcontractors about the work. However, he testified that these inspections were conducted by him to ensure compliance with the plans and specifications. His testimony corroborated that of Ms. Ford regarding LSU's role in the safety aspects of the project. When asked if his inspections included ensuring against safety violations or hazards, he testified, "Only as it would have impacted people not familiar with the project, the general public that might have gotten in harm's way or some LSU Medical Center employees that may have had reason to come into the area." Further, when asked if he intervened with the work by issuing instructions to the contractor or his employees, Robinson responded, "It's normally not my business to issue direct instructions to the contractor, so I don't recall any." Robinson also admitted that he had attended, on behalf of LSU, a preconstruction meeting with the contractor and the subcontractors during which the entire project, including plans for debris removal during the project, was discussed. However, he stated that his participation in this meeting consisted of offering suggestions and opinions regarding options, but "[u]ltimately they [Bernhard and B & C] decided how they wanted to handle what they wanted." Mr. Robinson admitted that during the project, the LSU safety office did become involved in the debris disposal system when it became apparent to LSU that the system utilized by the workers was endangering people who were unaware of the project. He testified that LSU instructed the contractor to barricade the area where the materials were being thrown to protect the general public, as well as LSU employees and other persons who may not have been aware of the ongoing project.
Russell Doucet, a plumbing mechanic who, on the day of the accident, was working for Bernhard on the fourth floor of the K-Wing, was also deposed regarding LSU's involvement in the project. Mr. Doucet testified that although LSU's project engineer, Mr. Robinson, visited the worksite and talked with the workers almost on a daily basis, the employees were not told how to perform their work nor did they report to anyone from LSU. Mr. Doucet testified that Mr. Robinson's involvement in the project was simply to ensure that the specs and plans were being followed. When asked whether anyone from LSU issued orders to the employees regarding safety on the project, Mr. Doucet stated, "No. It was mostly our job to make sure that it was safe." He also denied having any contact whatsoever with the safety office at LSU.
Regarding the accident itself, Mr. Doucet stated that he was on the fourth floor, unloading debris through the hole in the floor, down to the ground floor. Mr. Doucet was ready to dispose of a piece of angle iron, and asked Jerry Hales, the B & C employee assigned to seek clearance from the ground floor via walkie talkie, if B & C wanted to keep the angle iron. According to Mr. Doucet, "When I asked him he said, `No.' He said, `Go ahead and throw it.' So when I let it go, that's when I looked down and he [Mr. Perrit] washe was underneath."
Mr. Jerry Hales, the B & C employee who was assigned to seek clearance from the ground floor, also testified that the employees on the K-Wing project were neither supervised by nor given orders from any LSU employee. He added that if he had been instructed to do anything by an LSU employee, he would have had to seek approval from his own foremen, because, "I work for my foreman. I don't work for them." Mr. Hales testified that on the day of the accident, immediately prior to the incident, he had communicated down below, to Mr. Perrit on the ground floor, that they (he and the other employees on the upper floors) were ready to dispose of a stack of debris by throwing it through the hole in the floor. He testified that he told Mr. Perrit to stand clear below and to make sure that no one stood below *603 while the debris was dropped. He testified that Mr. Perrit said, "okay," and they began unloading the debris. Mr. Hale specifically testified that Mr. Doucet asked if it was okay to throw down a piece of angle iron, to which Hale responded, "yes, it [is] all clear." He then dropped the angle iron, striking Mr. Perrit on the head.
There has been no evidence presented to establish that LSU participated in the development or regulation of the debris disposal associated with this project. The depositions establish that LSU's actions were nothing more than the prudent discharge of its responsibility to provide a safe environment to its employees, visitors and general public who enter on its property. The evidence also established that the contractors retained the sole responsibility for the safety of their workers, and negates the suggestion that LSU voluntarily assumed such a duty. Finally, the evidence submitted resolves all genuine issues regarding the extent of LSU's duty in this matter. Therefore, the trial court did not err in granting summary judgment in LSU's favor. Accordingly, that judgment is affirmed; appeal costs are assessed to the plaintiffs.
AFFIRMED.
NOTES
[1] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.