h.WEIMER, J.
A suit seeking damages for personal injury and loss of consortium was filed by Celia A. Williams McGowan and her husband, Ronnie M. McGowan, naming Victory and Power Ministries (Church) and its insurer, Church Mutual Insurance Company, as defendants. The petition claims Mrs. McGowan severely injured her arm in a fall during church services in 1992. After the McGowans completed their case in chief at a trial on the merits, the trial court granted the Church’s motion for involuntary dismissal. The McGowans appealed; we affirm.
FACTS
On May 17, 1992, Celia A Williams McGowan was attending services at the Church in Baton Rouge, Louisiana. Because Mrs. McGowan was serving as a part of the ushering staff, as a “greeter,” she remained near the entrance while her husband took his seat in a pew with Mrs. McGowan’s parents.
It was Mrs. McGowan’s duty as a greeter to welcome people to the Church. At the beginning of the church services, there was a portion of the services referred to in testimony as “praise and. worship.” Generally, 50 to 60 persons would be in the church during praise and worship, but as other members of the congregation continued to arrive, the usual attendance at Sunday services equaled 100 to 200 persons.
It was during praise and worship when, according to the plaintiffs’ brief, “the Spirit of the Holy Ghost began to cause [Mrs. McGowan] to dance and shout in the Spirit of Praise.” Before any of the ushers could reach her, Mrs. McGowan, who was wearing high-heeled shoes, fell to the carpeted floor, injuring her arm.
After her fall, the ushers who had come to her aid helped her to the pew where her husband and parents were seated. Mr. McGowan knew nothing of the incident until he observed his wife’s swollen arm and wrist.
At the close of the McGowans’ case, the trial court granted the Church’s motion for involuntary dismissal. At that time the McGowans’ counsel reminded the court that [ «there was a deposition that had been entered into evidence which the court had not read. Instead of waiting to make a ruling until after there was time to read and consider the deposition, the trial court questioned counsel about its contents and immediately proceeded to rule in favor of the defendants.
DISCUSSION
Ordinarily, this court would review a trial court’s grant of a motion for involuntary dismissal under the manifest error standard of review. See Thornton ex rel. Laneco Const. Systems, Inc. v. Lanehart, 97-1995 (La.App. 1 Cir. 12/28/98), 723 So.2d 1118, 1122. However, in this case, we agree with the McGowans that it was error for the trial court to rule without considering the deposition testimony which was part of their case. Therefore, the effect of this error is that we review the entire record on appeal de novo, and determine, without reference to the manifest error standard of review, whether the plaintiffs have proved their case. See Bullard v. State, Department of Transportation and Development, 98-1942 (La.App. 1 Cir. 11/5/99), 744 So.2d 212, *914 cert. denied, 1999-3468 (La. 2/11/00), 754 So.2d 989.
Under certain circumstances, a church may be liable for the negligence of its volunteer servants.[1] See, e.g., Whetstone v. Dixon, 616 So.2d 764 (La.App. 1st Cir.), writs denied, 623 So.2d 1333 (1993). To determine .whether the plaintiffs proved the negligence of the- Church’s ushers, we use the duty/risk analysis. A plaintiff in a negligence action must prove five, elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant’s conduct failed to conform to the appropriate standard (the breach element); (3) the defendant’s substandard conduct was a cause in fact of the plaintiffs injuries (the cause-in-fact element); (4) the defendant’s substandard - conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and (5) the actual ^damages (the damages element). Cavalier v. Ward, 97-1927, pp. 4-5 (La.App. 1 Cir. 9/25/98), 723 So.2d 480, 482, writ denied, 98-2615 (La.12/11/98), 729 So.2d 1047. A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. See Mathieu v. Imperial Toy Corporation, 94-0952, p. 11 (La.11/30/94), 646 So.2d 318, 326. See also, Daye v. General Motors Corporation, 97-1653, p. 9 (La.9/9/98), 720 So.2d 654, 660.
The McGowans aver in their brief that the Church “had a duty to guard and guide [Mrs.] McGowan to make sure that .she did not get hurt while she was enjoying Wor[s]hip Service in the manner that most worshippers do when the annointing of the Holy Ghost began to cause them to dance and shout in the Spirit of praise[.]” They argue this duty was assumed when the Church appointed certain members to serve as ushers who- routinely gathered around a member who was “in the Spirit of Praise” to prevent a fall.
Thus, the McGowans are invoking the legal principle that a negligent breach of a duty which has been voluntarily or gratuitously assumed may create civil liability, citing Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, 1371 (La.1984). Specifically, if a person undertakes a task which he otherwise has no duty to perform, he must nevertheless perform that task in a reasonable and prudent manner. Moore v. Safeway, Inc., 95-1552 (La.App. 1 Cir. 11/22/96), 700 So.2d 831, 846, writs denied, 97-2921 (La.2/6/98), 709 So.2d 735, and 97-3000 (La.2/6/98), 709 So.2d 744.
While not imposing a duty on the Church or its ushers, but rather assuming only for the sake of discussion that the ushers in the instant case owed such a duty to Mrs. McGowan, we note the record does not support a finding that the ushers failed to act in a reasonable and prudent manner. Numerous witnesses were called to testify in this case, but not one of them stated that the ushers were able to reach Mrs. McGowan’s side in time to prevent her from falling or that they could have reasonably anticipated her fall.
| sMrs. McGowan herself could not describe what happened to her after she raised her hands and began “praying in the spirit.” When asked if she went “into a dance and a shout,” she replied, “Apparently so.” Although she stated she Was near the ushers, and that she depended upon them to guard her as they had done in the past, there was no testimony that the ushers took an unreasonable length of time to reach Mrs. McGowan before she fell. She also admitted that she had never “gone off in the spirit” in the particular area of the church where she was located when the accident occurred.
Mr. McGowan testified that he usually was near his wife to guard her when she would, as he stated, “go into the spirit and *915 to dance in the Holy Spirit.” • Although Mr. McGowan testified he thought it was during the praise and worship portion of the service that his wife would ordinarily “go into the spirit,” he nevertheless was seated in the church during this portion of the service and had left his wife at the entrance to perform her duties as a greeter. His action of remaining in his pew during praise and worship, while his wife continued to perform her duties as greeter, illustrates that his wife’s being overcome with the spirit at that time in the services and in that area of the church was not anticipated by him, just as it was not anticipated by the ushers.
The head usher, Pamela Dillon, testified that “at the minute ... [she saw Mrs. McGowan] was dancing ... before the Lord,” she moved toward Mrs. McGowan and motioned to another usher to do the same. However, Ms. Dillon said Mrs. McGowan fell to the floor before she could reach her.
Mrs. McGowan’s fall was at an unanticipated time within the services and at an unanticipated place within the church building. Mrs. McGowan’s fall occurred within an extremely short period of time after Ms. Dillon became aware of Mrs. McGowan’s actions. Although Ms. Dillon attempted to reach Mrs. McGowan, she simply did not reach her in time. Any duty that might have been owed by Ms. Dillon would not have required her to do more than she did to prevent the accident. There has been no suggestion that Ms. Dillon or any other official or member of the Church did anything to |fimake Mrs. McGowan fall; there is only the claim that they did not do enough to prevent such an accident. Under these circumstances, Ms. Dillon’s effort to assist Mrs. McGowan was all that was legally required. This case is factually similar to Thielmier v. Louisiana Riverboat Gaming Partnership, 31,739, pp. 5-6 (La.App. 2 Cir. 3/31/99), 732 So.2d 620, 624, wherein an entertainer in a casino took the hand of an audience member to assist her down the steps after she had been on stage as part of the performance. Although the elderly audience member fell while attempting to descend the steps, the entertainer did not breach a duty to her because there was no way for him to perceive that she was in danger. The casino was not liable for the entertainer’s actions because the entertainer was not negligent.
Thus, the instant case differs factually from the seminal case of Harris v. Pizza Hut, supra, wherein the business owner was liable because it assumed a duty of protection; there is no breach of duty in the instant case, as there was in Harris. Cf. Jones v. Schwegmann Giant Super Markets, Inc., 544 So.2d 1314, 1317 (La.App. 4th Cir.), writ denied, 548 So.2d 1248 (1989) (store owner not liable for battery upon customer by another customer in the check-out line because security guard responded immediately upon summons over the PA system; there was no evidence that anyone could have responded any sooner.)
CONCLUSION
We affirm the judgment of the trial court dismissing the petition of the plaintiffs, and we assess plaintiffs with all costs of this appeal.
AFFIRMED.
FITZSIMMONS, J., concurs and assigns reasons.
1

. We pretermit discussion of whether the Church can be vicariously liable in tort for the alleged negligence of one of its volunteers which impacts another volunteer, as this issue was neither raised nor briefed on appeal.