|2FOIL, Judge.
In this appeal, defendants, Louisiana & Delta Railroad, Inc. and Lexington Insurance Company, challenge the trial court’s liability and quantum determinations. After a thorough review of the record, we affirm.
Plaintiff, Victor Caro, filed this lawsuit against Louisiana & Delta Railroad, Inc. (L & D) and its insurer, Lexington, seeking to recover damages for a back injury arising out of an accident at a railroad crossing owned and maintained by L & D. The evidence established that plaintiff was driving toward the railroad crossing after completing *436 the night shift at a plant several miles away. As he approached the crossing, there was no train in sight and the lighting system was not in operation. However, the gate arm mechanism became activated, the gate arm came down without warning, and plaintiffs vehicle struck the gate arm. Plaintiff testified that the gate suddenly descended upon his vehicle, causing him to lose control and veer off into a ditch. After plaintiff attempted to exit the vehicle, he slipped and struck his back on the car. Following the accident, plaintiff was diagnosed as having a ruptured disc in his back, and underwent back surgery.
The evidence established that the gate arm malfunctioned because a snake entered a junction box, which contained electrical wires governing the gate arm mechanism, and caused the system to short circuit. The snake was able to enter the box because the lid was loose and the box was not sealed tight or locked. Also, the evidence established that all of the flashing signal lights at the crossing were not working at the time of the accident because of acts of vandalism.
Plaintiff asserted negligence and strict liability theories of recovery, claiming that the railroad should have secured the junction box by means of a lock or other sealing device, particularly in light of the railroad’s prior knowledge of acts of vandalism at the crossing. Defendants contended that they were not at fault in causing the accident, urging instead that plaintiff was at fault for not maintaining a proper lookout. Defendants sought 13to establish that given the amount of time that the gate arm probably took to descend, and plaintiffs position when he first noticed the arm coming down, he should have had sufficient time to take evasive action to avoid hitting the gate arm. Defendants also urged that the accident was caused by the fault of the third party vandals, who should be held responsible for the resulting accident.
Following a trial, the court ruled that defendants were solely at fault in causing the accident. The court found the railroad was negligent in maintaining the crossing, and that the junction box was “defective,” finding the railroad hable under La.Civ.Code art. 2317 as well. The court rejected the argument that the plaintiff failed to maintain a proper lookout, finding that the evidence established that the gate arm mechanism came down suddenly in front of plaintiff, giving him no time to take proper evasive action. The court also rejected the argument that L & D should escape liability due to the fault of the third party vandals, noting that L & D was aware of previous acts of vandalism, and that its employees saw evidence of vandalism only one day prior to the accident, but failed to report it.
Upon finding the defendants at fault in causing the accident, the court awarded plaintiff $622,936.41, of which $175,000.00 was awarded for pain and suffering and $400,-000.00 was awarded for past and future wage loss. In entering the awards, the trial court rejected defendants’ causation argument based on their claim that plaintiff had a preexisting back condition which was not aggravated by the accident. The court specifically noted that while the evidence did show that plaintiff had previous back strains and pains, two medical experts testified that the problems were minor, and they opined that the car accident caused plaintiffs severe back injury.
Defendants took this appeal, challenging the trial court’s liability and quantum determinations. With respect to liability, the defendants urge that the trial court erred in finding the railroad at fault, in failing to find plaintiff at fault, and in failing to assess some fault to the vandals. On the issue of ^damages, defendants do not challenge quantum per se, but challenge the trial court’s factual finding that the accident caused plaintiffs back injury, which necessitated surgery and resulted in his disability.
On factual questions, the standard of review set forth in Stobart v. State, Department of Development and Transportation, 617 So.2d 880, 882 (La.1993), makes it clear that this court may not set aside a trial court’s finding unless we find from the record that a reasonable factual basis does not exist for the trial court’s ruling, and that the record establishes the finding is clearly wrong (manifestly erroneous). The issue to be resolved is not whether the trier of fact *437 was right or wrong, but whether the factfin-der’s conclusions are reasonable. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous. Id. at 882-883.
After a thorough review of the record, we are convinced that the trial court’s factual findings as reflected in its written reasons for judgment on liability and quantum are reasonable, and may not be disturbed by this court. The evidence on the issue of plaintiffs fault and the medical testimony on the causation issue was conflicting. Furthermore, we believe the trial court correctly refused to relieve the defendants of liability for the acts of vandalism for the reasons set forth by the court. In affirming the judgment of the trial court, we adopt the trial court’s written reasons for judgment as our own, and attach a copy hereto. A1 costs of this appeal are assessed to defendants, Louisiana & Delta Railroad, Inc. and Lexington Insurance Company.
AFFIRMED.
[.ATTACHMENT
Victor Caro
vs.
Louisiana & Delta Railroad, Inc.
Docket No. 86578
16th Judicial District Court
Parish of St. Mary
State of Louisiana

REASONS FOR JUDGMENT

This case involves a one vehicle accident which occurred on August 5, 1990. Plaintiff Victor Caro filed suit against Louisiana And Delta Railroad (L & D) alleging he sustained injury when he struck a gate arm crossing which suddenly descended in front of him while he was crossing the railroad track owned by L & D.
Trial was held on June 7 and 8,1993. The following witnesses testified at trial: plaintiff, Victor Caro; Ranee Ingram, Doug Hebert, Harold Louviere, co-workers of plaintiff; Ricky Thornhill, signal supervisor for L & D; Mike Mouton, track supervisor for L & D; Mike Himel, engineer for L & D; Willie Young, conductor for L & D; Byron La-londe, assistant general manager of L & D; Glen Hebert, vocational rehabilitation counselor; Dr. Davey Bernard, expert in physics; and Dr. John Grimes, rehabilitation counsel- or.
The following depositions were entered into the record: Mr. Lawrence Dorsky, an electrical engineer and an expert in safety and quality control; Dr. John Humphries, an orthopedic surgeon; Dr. Stuart Phillips, an orthopedic surgeon; Trooper Ricky Thibo-deaux, the state policeman who investigated the accident; and Forrest Becht, president and general manager of L & D. Finally, various records, reports and medical bills were entered into the record. After trial on the matter was completed, the court took the matter under advisement to determine liability and damages.

LIABILITY

The accident in question occurred at about 5:45 a.m. on August 5,1990 at the junction of Louisiana Highway 317 and a railroad crossing. Plaintiff testified that a railroad cross-arm suddenly came down in front of him. No warning lights flashed before the | scross-arm fell and no train was in sight. Mr. Caro, startled by the falling cross-arm, lost control of his car. He crashed through the cross-arm and went into a ditch. He climbed out of his car and as he was trying to climb up the incline, he slipped and fell back against the ear. He suffered injury to his neck and back as a result of the accident. Caro filed suit against Louisiana and Delta Railroad as owner and operator of the crossing.
At the time of the accident, Caro, 49 years old, was a Production Lab Assistant for Cabot Corporation. He had worked for Cabot for 27 years. The Cabot plant where plaintiff worked is serviced by L & D. The crossing where the accident occurred is regularly traversed by Cabot employees going to and from work. This crossing contains two signal lights with a cross-arm mechanism. Upon approach of the train, the cross-arm is designed to come down and the lights are *438 supposed to flash. The signal light and cross-arm mechanisms are controlled by machinery and circuitry contained in metal boxes located on the signals.
Several employees of Cabot testified at the trial that at this particular crossing the signal lights and cross-arm mechanism had a history of malfunctioning. They testified that at times the arm goes up and down and the lights flash even when no train is in sight. Doug Hebert and Harold Louviere, co-employees of plaintiffs, testified that two or three times in the past they have reported the malfunctioning of the cross-arm to L & D.
As testified to by L & D employees, the cross-arm had malfunctioning problems because of continuing vandalism. Ricky Thorn-hill, the signal supervisor, said that his train crews are supposed to look out for problems at crossings and report to him if any repairs are needed. He is on call 24 hours a day to repair signals at crossings. He stated that he always responds immediately to reports of vandalism. He made repairs due to vandalism at this particular crossing just a couple of days before the accident. When he received notice that an accident had occurred at that crossing, he went to inspect the scene. He said that the lights were not working at all. The cover to the junction |7box was loose and he discovered a dead snake in the junction box. He testified that he believes the snake had shorted out the power wires. He admitted that at no time before the accident did he think to put a lock on the junction box in an attempt to deter vandalism.
President and General Manager of L & D, Forrest Becht testified that before the accident he was aware of continuing vandalism at this crossing. He said that he intended, even before the accident, to put locks on all L & D’s junction boxes. He also testified that Mr. Lalonde reported to him that Mike Hi-mel, an engineer, had seen evidence of vandalism the day before the accident but had not reported it and, therefore, Himel would be disciplined.
Mike Himel, an engineer for L & D, stated that it was the policy of L & D employees to be on the look out for repairs that may be needed at crossings and to report any problems. Himel said that the day before the accident he doesn’t remember if he saw the lights flashing at this intersection. He doesn’t remember telling anyone that there was broken glass on the ground. His supervisor, Lalonde, disciplined Himel by pulling him out of service for ten days for failure to report vandalism.
Byron Lalonde testified that after he learned about the accident, he had a meeting with his crew. He testified that he couldn’t remember who told him that on Saturday they had noticed broken glass but didn’t report it. He, however, did remember disciplining Himel for failure to report.
Plaintiffs expert, Lawrence Dorsky, an electrical engineer and a safety and quality control expert, testified that L & D should have had a locked box on the junction box. He stated that in view of the numerous incidences of vandalism, a locked box would be a logical solution to the problem. Dorsky also stated that if the snake short-circuited the cross arm, then the cross arm would make a more rapid descent than if the cross arm were functioning normally. Normally a cross-arm will take between 10 to 15 seconds to descend. In this instance, he stated that the cross arm could |8have fallen in 1½ seconds. Furthermore, he testified that had the box not been vandalized, then the accident probably wouldn’t have happened.
Defendant’s expert, Dr. Davey Bernard, qualified as an expert in physics. He stated that when the power was turned off in the control box, the cross arm descended in nine seconds, which is no significant delay from when the power was on. Further, he said that when he shorted out the power, it took eleven seconds for the cross arm to come down. Dr. Bernard concluded that plaintiff should have had 'sufficient time to see the cross arm descending and bring his vehicle to a stop.
Plaintiff argues that L & D should be responsible to him for his injuries under a theory of negligence and strict liability. Plaintiff submits that if the cross arm had not malfunctioned, then the accident would not have happened. So many acts of vandal *439 ism had occurred at this crossing that L & D should have had a locked box on the junction box to deter vandalism. Furthermore, L & D employees had observed evidence of vandalism the day before the accident and had not reported. Under a theory of strict liability, plaintiff submits that the junction box was defective because it was designed to be sealed and watertight. If it had been properly sealed, then a snake would not have been able to get into the box and cause a short-circuit.
Defendant submits that it was a third party or act of God that is at fault for the accident. L & D argues that though a locked box could have been put on the junction box, they took other reasonable measures to keep the crossing in good working order. Thorn-hill regularly inspected all crossings and immediately repaired crossings when malfunctions were discovered. L & D stresses that the law does not demand perfection. They took reasonable measures to keep their equipment in order. It was not their fault that a snake crawled into the box or that vandals pried the lid off of the junction box. Also, defendant submits that Caro should have had plenty of time to stop his car and he must have not been paying attention.
|9Upon reviewing the testimony at trial and the records and depositions submitted into evidence, the Court concludes that L & D is hable to Caro for his injury. An isolated act of vandalism or even a couple of acts of vandalism may be excused and fault attributed to a third party. That is not the case here. L & D had numerous and ongoing reports that there was a problem with vandalism at this crossing. The president of L & D even testified that before the accident he wanted to put locked boxes on all the junction boxes to deter vandalism. Although Mike Himel and Willie Young did not testify on the stand that they definitively saw evidence of vandalism on the day before the accident, their supervisor said that one of them had told him he saw broken glass and did not see flashing lights and that he failed to report these problems. Obviously, this concerned Mr. Lalonde enough to suspend Mr. Himel from duty for ten days.
Although defendant’s expert Dr. Bernard testified that a cross arm descends in eleven seconds under conditions of a simulated short-circuit, it is every day experience that under normal conditions railroad cross arms descend in a much shorter period of time. It is therefore logical to believe that an arm without power descends even more quickly. The Court discounts the scientific theory which Dr. Bernard used to explain a contrary conclusion because he did not decide upon the applicability of that theory until trial, after discovery was complete. Plaintiff had no opportunity to respond to his new conclusion. And of course, since the lights were not functioning at all when Caro approached the intersection, he did not have the added visual stimulation that should have alerted him to stop more rapidly.
For these reasons, the court finds L & D negligent in maintenance of the crossing.
Furthermore, had the junction box been properly sealed and the top not been pried off, a snake would not have been able to crawl into the box and short circuit the system. For this reason the Court finds that the box was defective and L & D is liable to plaintiff under a theory of strict liability as well.

JioDAMAGES

Plaintiff asks this Court to award damages for his pain and suffering, past and future lost wages, and medical bills.
At the time of the accident, Caro was 49 years old and had worked at Cabot Corporation for 27 years. His work required extensive manual labor with heavy lifting. He earned approximately $42,000.00 per year. Caro testified that before the accident occurred he planned on working at Cabot Corporation until his retirement somewhere between the ages of 62 and 65 years old.
Caro testified that he felt immediate pain in his lower back when the accident occurred. He was treated conservatively by Dr. John Humphries for about eight months after the accident. He also had physical therapy. He testified that the pain in his back did not subside at all during this time and he had constant back pain which radiated down his *440 leg and caused some numbness in his leg. He has not worked at all since the accident.
Dr. Humphries testified that he diagnosed Caro with acute cervical sprain. When Dr. Humphries saw no improvement during the eight month period, he recommended that Caro see an orthopedic surgeon who specializes in back problems.
Caro began seeing Dr. Stuart Phillips in April of 1991. Dr. Phillips examined plaintiff on several occasions, reviewed reports from Dr. Humphries, and studied plaintiffs MRI. He concluded that plaintiff was suffering from two injured discs in his back. Dr. Phillips performed surgery on plaintiff on August 20, 1991. Dr. Phillips testified that within a few weeks plaintiffs leg pain was gone and he was able to do moderate exercise. He also stated that plaintiff was a very motivated patient and was faithful about doing his exercises in an effort to improve. Both Dr. Phillips and Dr. Humphries testified that plaintiff will never be able to do heavy labor again and his work should be restricted to light work.
Caro testified that despite the surgery, his back hurts every day. He also experiences occasional pain in his leg, groin area and neck. He takes pain pills, Prozac and sleeping pills. He stated that the constant pain has affected him not only physically |ubut mentally as well. He admitted on cross examination that in the past five years prior to this accident he had some problems with pulling a muscle in his back but he did not mention these incidents to either doctor.
Dr. Humphries and Dr.- Phillips testified that they did not know about plaintiffs previous back problems but they both were of the opinion that the previous problems were minor and the ear accident was the cause of plaintiffs severe back problems now.
Glen Hebert, a licensed rehabilitation counselor testified at trial that plaintiff will not be able to return to any of his previous jobs and retraining is not a viable option. Plaintiff is of average intelligence but he has done heavy manual labor all his life. He stated that some of his skills are transferable but he believes he will never be able to earn more than $5.50 per hour.
Dr. John Grimes, a rehabilitation counselor felt that Caro is a good candidate for placement because he does have some transferable skills. He recognized, however, that Caro’s age could be a barrier to him finding employment. He stated that Caro may be able to earn $6.50 per hour.
Finally, the reports of Dr. Ken Boudreaux, defendant’s economist and Dr. Bernard Pet-tingill, plaintiffs economist were entered into the record. Dr. Boudreaux’s report sets forth that plaintiffs past lost wages are $113,893.58. Dr. Pettingill’s report has plaintiffs lost wages at $139,775.37.
Dr. Boudreaux reports that assuming plaintiff can work full time at $6.00 per hour until retirement, his future lost wages are $254,485.70. If plaintiff can work full time at $10.00 per hour then his future loss wages are $202,726.94.
Dr. Pettingill reports that assuming plaintiff cannot work at all, then his future loss wages are $442,242.86. If plaintiff can work full time earning $4.87 per hour then his loss would be $352,116.65.
Upon reviewing the testimony, evidence presented at trial and the evidence submitted into the record, the Court concludes that plaintiff has suffered a serious back injury which resulted in | ^surgery; he is now restricted in many aspects of his work and social life. However, the Court is not of the opinion that plaintiff is suffering from a total disability. His doctors and the rehabilitation counselors testify that he will not be able to do heavy manual labor; he is capable of doing other kinds of work. Furthermore, plaintiff testified that he is not totally pain free. However, he is able to take part in moderate exercise such as biking and dancing.
For the above reasons, the Court finds in favor of plaintiff Victor Caro and against defendant Louisiana and Delta Railroad. The Court awards to plaintiff $175,000.00 for pain and suffering, $125,000.00 for past lost wages, $275,000.00 for future lost wages. Additionally, plaintiff is awarded his medical *441 bills, property damage to Ms car and court costs.
Officially granted tMs 12th day of July, 1998 at Franklin, St. Mary Parish, Louisiana.
/s/ Anne Lennan Simon Anne Lennan Simon District Judge
J13I6TH JUDICIAL DISTRICT COURT
PARISH OF ST. MARY
STATE OF LOUISIANA
VICTOR CARO
VS.
LOUISIANA & DELTA RAILROAD, INC.
DOCKET # 86578
ENTRY NO_RECORDED
IN MORTGAGE BOOK 672 AT
FOLIO 72.
JUDGMENT
This matter came before the Court after being regularly fixed on the docket, before the Honorable Anne Lennan Simon, for trial on the merits on June 7th and 8th, 1993:
Present: James P. Ryan and Cameron B. Simmons, Attorneys for, and Victor Caro, plaintiff;
John Blackwell, Attorney for Louisiana & Delta Railroad, Inc., and a company representative thereof;
Nicholas Canaday, III, Attorney for Lexington Insurance Company.
The Court after having heard the evidence, and upon consideration of the pleadings, arguments of counsel, stipulations of the parties, exMbits introduced into the record, and in accordance with the written reasons for judgment dated July 12th, 1993 filed into the record and made part hereof by reference, finds for the reasons assigned:
IT IS ORDERED, ADJUDGED AND DECREED, that there be judgment herein in favor of plaintiff, Victor Caro, and against the defendants, Louisiana & Delta Railroad, Inc. and it’s insurer Lexington Insurance Co., in accordance with the terms and conditions of the policy therein, for the full and true sum of Six Hundred Twenty-Two Thousand Nine Hundred Thirty-Six & 41/100’s ($622,936.41) Dollars, together with legal interest from date of judicial demand until paid, and all cost of these proceedings.
JUDGMENT READ, RENDERED and SIGNED, this 10th day of September, 1993, at New Iberia, Louisiana, in Iberia Parish, La.
/s/ Anne Lennan Simon District Judge