978 So.2d 447 (2007)
Bobbie BOUQUET and James W. Bouquet, Jr.
v.
WAL-MART STORES, INC.
No. 2006 CA 1811.
Court of Appeal of Louisiana, First Circuit.
December 21, 2007.
Writ Denied April 4, 2008.
Rehearing Granted January 10, 2008.
*448 Peyton P. Murphy, Lewis Unglesby, Baton Rouge, LA, for Plaintiffs-Appellants Bobbie and James W. Bouquet, Jr.
Mark D. Plaisance, Baker, LA, Appellate for Plaintiffs-Appellants Bobbie and James W. Bouquet, Jr.
Roy C. Beard, Sidney J. Hardy, Metairie, LA for Defendant-Appellee Wal-Mart Louisiana, L.L.C.
Before GUIDRY, PETTIGREW, DOWNING, HUGHES and WELCH, JJ.
DOWNING, J.
This is an action for personal injuries sustained by the plaintiff, a store patron, who claimed to have sustained injury when she slipped and fell while shopping at defendant's store. Following a trial by jury, plaintiff was awarded $115,000.00 in general damages, $110,000.00 in future medical expenses, and $143,766.30 in past medical expenses. Plaintiff's husband also received an award of $15,000.00 for his loss of consortium. The trial court thereafter denied plaintiffs' motions for additur, JNOV, and in the alternative, for a new trial. Plaintiffs have appealed. For the reasons that follow, we reverse.

FACTS
On August 26, 2002, plaintiff, Bobbie Bouquet, was a patron of the Wal-Mart store located at 14740 Plank Road in Baker, Louisiana. As Mrs. Bouquet was walking through the pet department of the aforementioned store, she allegedly slipped and fell due to water on the floor in front of the fish aquariums. According to the testimony of Mrs. Bouquet, her right foot slipped and she fell to the floor on her buttocks. Following her fall, Mrs. Bouquet claimed to have noticed paper towels on the floor, as if someone had previously attempted to wipe up the water.
After reporting the accident to store personnel, Mrs. Bouquet and her husband, James W. Bouquet, Jr. (also a plaintiff herein), continued along their planned journey to their daughter's home in Kentwood, Louisiana. Several hours after arriving at her daughter's home, Mrs. Bouquet testified that her back pain increased and she sought treatment at the emergency room of Lallie Kemp Hospital. After filling out the necessary paperwork, Mrs. Bouquet claimed that she was required to wait approximately eight hours until she left the hospital without seeing a doctor.
Mrs. Bouquet testified that she traveled to Baton Rouge the following day and sought treatment at the walk-in clinic at Earl K. Long Medical Center. Personnel at the hospital took x-rays of Mrs. Bouquet's left knee and lumbar spine, and prescribed a muscle relaxant together with anti-inflammatory medication. On September 4, 2002, Mrs. Bouquet sought treatment from Dr. Charles K. Angelo, Jr., a family practitioner in Donaldsonville, Louisiana. At this point, Mrs. Bouquet testified that she obtained an attorney, and was referred on September 12, 2002, to the care of Dr. F. Allen Johnston, an orthopedic surgeon in Baton Rouge, Louisiana. Dr. Johnston treated Mrs. Bouquet conservatively, prescribing anti-inflammatory medication and physical therapy. When Mrs. Bouquet returned to Dr. Johnston on October 31, 2002, with continued complaints of unremitting pain in her lower *449 back, Dr. Johnston ordered an MRI. The results of the MRI suggested degenerative problems between Mrs. Bouquet's fourth and fifth vertebrae. Dr. Johnston thereafter scheduled Mrs. Bouquet to undergo one, then later a second, epidural steroid injection, in an effort to alleviate the irritation in the nerve root and lessen the pain radiating down her leg.
When the epidural steroid injections failed to diminish Mrs. Bouquet's complaints of pain in her lower back, Dr. Johnston referred Mrs. Bouquet to a fellow orthopedic surgeon, Dr. Jorge Isaza, for a surgical evaluation. Dr. Isaza began treating Mrs. Bouquet on February 21, 2003. Dr. Isaza reviewed Mrs. Bouquet's medical records and ordered additional testing, including a lumbar myelogram, in an attempt to diagnose Mrs. Bouquet's ongoing complaints of lower back pain. At trial, Dr. Isaza conceded that many of the findings that he observed (i.e., lumbar osteophytes, narrowing of the disc space, foraminal stenosis, and facet hypotrophy) were degenerative conditions that predated Mrs. Bouquet's fall at Wal-Mart. Based upon these findings, Dr. Isaza performed a lumbar fusion at the L4-5 level on May 10, 2004.
Dr. Isaza referred Mrs. Bouquet to Dr. John E. Clark, a Baton Rouge physician, specializing in physical medicine, rehabilitation, and pain management. Dr. Clark initially saw Mrs. Bouquet prior to her surgery in August 2003, and attempted, through pain management techniques, to obviate the need for surgery. Unfortunately, Dr. Clark was unable to alleviate Mrs. Bouquet's pain. Following the surgery performed by Dr. Isaza, Mrs. Bouquet no longer complained of pain in her leg, but continued to express complaints of pain in her lower back and buttocks. Dr. Clark continued to treat Mrs. Bouquet with narcotic pain medications, antidepressants, muscle relaxants, and a series of steroid injections.
Mrs. Bouquet also saw Dr. Robert Davis, a psychologist, who diagnosed her with clinical depression and psychosis associated with her physical pain and limitations. Prior to trial, Mrs. Bouquet also saw Dr. J. Michael Burdine, a board-certified pain management specialist, who testified via deposition that his office had provided Mrs. Bouquet with routine literature regarding further treatment options that might help to lessen her pain. These treatment options included implantation of a spinal cord stimulator, intrathecal infusion device, or possibly, additional lumbar surgery at some point in the future.

ACTION OF THE TRIAL COURT
On July 10, 2003, Mr. and Mrs. Bouquet (hereinafter referred to collectively as "plaintiffs") filed suit in East Baton Rouge Parish, naming Wal-Mart Stores, Inc. ("Wal-Mart") as a defendant.[1] Wal-Mart later responded to the petition filed by plaintiffs, generally denying the allegations contained therein, and asserted a third party demand against Feather & Fin Ranch (hereinafter "Feather & Fin"), and its insurer, Travelers Property Casualty Company of America (hereinafter "Travelers"). Wal-Mart claimed that at the time of Mrs. Bouquet's alleged accident, Feather & Fin was providing maintenance service to Wal-Mart's aquariums and related appurtenances in accordance with a vendor's agreement executed by representatives of Feather & Fin and Wal-Mart.
*450 On December 1, 2004, plaintiffs filed an amended and supplemental petition, naming Feather & Fin and Travelers as additional defendants therein. Wal-Mart and plaintiffs later moved to dismiss their claims against Feather & Fin and Travelers on March 29, 2005 and April 4, 2005, respectively.
This matter ultimately proceeded to a trial by jury on January 31, 2006 through February 2, 2006. After listening to the evidence presented and the charges of the trial court, the jury returned a verdict in favor of plaintiffs and against the defendant, Wal-Mart. The jury awarded to Mrs. Bouquet the following sums:

 Past medical expenses . . . . . . . . . . . . . . . . $143,766.30
 Future medical expenses . . . . . . . . . . . . . . . $110,000.00
 Physical pain and suffering (past and future) $ 50,000.00
 Mental pain and suffering (past and future) . . . . . $ 50,000.00
 Loss of enjoyment of life . . . . . . . . . . . . . . $ 15,000.00
 ___________
 TOTAL . . . . . . . . . . . . . . . . . . . . . $368,766.30

In addition, the jury awarded to Mr. Bouquet the following sum:

 Loss of consortium . . . . . . . . . . . . . . . . . $ 15,000.00

Believing that the amounts awarded by the jury were unreasonably low, plaintiffs thereafter filed a Rule for Additur, a Motion for JNOV, and in the alternative, for a New Trial. At the conclusion of a hearing held on May 22, 2006, the trial court rendered a judgment in open court denying the plaintiffs' motions. Plaintiffs thereafter appealed.

ISSUES PRESENTED FOR REVIEW
In connection with their appeal in this matter, the plaintiffs present the following issues for review and consideration by this court:
1. Is a jury award of $115,000 in general damages unreasonable when the plaintiff has a lumbar disc fusion, has nearly all of her movements restricted, and must take medicine the remainder of her life to make her pain tolerable?
2. When expert testimony demonstrates that future medical treatment is necessary and that the present value of future medical expenses is no less than $310,338 and maybe as high as $472,404, does a jury commit error by awarding only $110,000?
3. When the spouse of an injured party must perform all household duties, has no intimate relations with his injured spouse, and must assist that spouse with her personal hygiene, does a jury commit error by awarding only $15,000 in consortium damages?

STANDARD OF REVIEW
In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the trier of fact. La. Civ.Code art. 2324.1. The standard for appellate review of general damage awards is set forth in Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), wherein the Louisiana Supreme Court stated that "the discretion vested in the trier of fact is `great,' and even vast, so that the appellate court should rarely disturb an award of general damages." The appellate court's initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Youn, 623 So.2d at 1260. The role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Millican v. Ponds, 99-1052, p. 6 (La.App. 1 Cir. 6/23/00), 762 So.2d 1188, 1192. Each *451 case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration. Youn, 623 So.2d at 1260.

ANALYSIS
The issues raised by the plaintiffs in this appeal challenge the adequacy of the quantum of damages awarded by the jury.
Based upon a thorough review of evidence before us, we find that the jury abused its discretion by awarding an inadequate award of only $115,000.00 in general damages. Once it is determined that there has been an abuse of discretion then we must determine the lowest point which is reasonably within the discretion of the jury. A review of prior damage awards for comparable injuries indicates that the lowest reasonable award of general damages that was with the jury's discretion would have been $200,000.00. See Use' v. Use', 94-0972, p. 15 (La.App. 1 Cir. 4/7/95), 654 So.2d 1355, 1366, and Cheramie v. Contract Haulers, Inc., 98-1399, p. 7 (La. App. 1 Cir. 9/24/99), 754 So.2d 987, 991.
We do not find that the jury abused its discretion in the award of future medicals nor do we find that the jury abused its discretion in the award of consortium to James W. Bouquet, Jr.

DECREE
For the reasons above, we increase the general damages award of Bobbie Bouquet from $115,000.00 to $200,000.00. In all other awards, we affirm the trial court.
AMENDED AND AFFIRMED AS AMENDED.
GUIDRY, P., concurs in the result.
WELCH J., concurs and dissents for reasons assigned.
PETTIGREW, J., dissents and assigns
WELCH, J., concurring in part and dissenting in part.
I agree with the majority that the jury abused its discretion by awarding only $115,000 in general damages and that the judgment should be amended to reflect a general damage award of $200,000, the lowest award reasonably within the jury's discretion. However, I believe that the jury also abused its discretion in the award of future medical expenses to Mrs. Bouquet and in the award of loss of consortium to Mr. Bouquet. Therefore, I respectfully dissent in part.
The jury awarded Mrs. Bouquet the sum of $110,000 for future medical expenses. Mrs. Bouquet contends that the jury's award was erroneous and an abuse of discretion because the uncontradicted evidence at trial demonstrated that she will incur approximately $310,338 to $472,404 in future medical expenses during her lifetime.
Future medical expenses must be established with some degree of certainty. Hymel v. HMO of Louisiana, Inc., XXXX-XXXX, p. 26 (La.App. 1st Cir.11/15/06), 951 So.2d 187, 206, writ denied, 2006-2938 (La.2/16/07), 949 So.2d 425. However, an award for future medical expenses is by nature somewhat speculative. Id. An award for future medical expenses is justified if there is medical testimony that they are indicated and setting out their probable cost. Id. In such a case, the court should award all future medical expenses that the medical evidence establishes that the plaintiff, more probable than not, will be required to incur. Id. An appellate court should not set aside an award for *452 future medical expenses absent an abuse of the trier of fact's discretion. Id.
The evidence in the record established that as a result of Mrs. Bouquet's injuries to her spine, she will require pain medication and medical treatment for the remainder of her life. The testimony of Mrs. Bouquet's treating physicians established that Mrs. Bouquet is currently prescribed the prescription drug oxycodone. Mrs. Bouquet's physicians further explained that Mrs. Bouquet will have to take this drug on a daily basis until she becomes tolerant of the medication, at which point she will need either intrathecal drug therapy or another surgery.
According to Randy Rice, Ph.D., Mrs. Bouquet's expert in economics, the present day value of Mrs. Bouquet's total future medical expenses was computed to be approximately $310,338 (if Mrs. Bouquet was placed on intrathecal drug therapy and has a future surgery) or $472,404 (if Mrs. Bouquet remained on medication for the remainder of her life). Dr. Rice's projections were based upon the life care plan prepared on behalf of Mrs. Bouquet by Stephanie Chalfin, a vocational rehabilitation consultant and life care planner, and on the assumption that Mrs. Bouquet's remaining life expectancy was approximately 27.22 years according to the life expectancy tables published by the National Center for Health Statistics. This evidence was uncontradicted.
Therefore, based upon my review of the record, I believe that the jury abused its discretion in awarding Mrs. Bouquet only $110,000 in future medical expenses, a sum that would not even cover half of Mrs. Bouquet's projected future medical expenses and was apparently based on a hypothetical (and speculative) suggestion during the defendant's cross examination of Dr. Rice that Mrs. Bouquet's remaining life expectancy was limited to 17.22 years. But, since the defendant did not present any evidenceexpert or otherwiseto contradict Dr. Rice's findings or to suggest that Mrs. Bouquet's life span was less than the normal life expectancy established by Dr. Rice, there was no factual basis in the record for such an award by the jury, and therefore, an award of $110,000 was not reasonably within the jury's discretion. Rather, the uncontradicted evidence in the record established that Mrs. Bouquet will, more likely than not, incur future medical expenses between $310,338 to $472,404, and therefore an award of $310,338 was the lowest amount reasonably within the jury's discretion under the facts of this case. Accordingly, I would also amend the trial court's judgment insofar as it awarded the plaintiff $110,000 in future medical expenses, and I would raise that award to $310,338.
I also believe that the jury's award of only $15,000 to Mr. Bouquet for his loss of consortium claim was an abuse of discretion. The claim for loss of consortium is broken down into several components including loss of love and affection, society and companionship, sexual relations, the right of performance of material services, right of support, aid and assistance, and felicity. Frazer v. St. Tammany Parish School Board, 99-2017, p. 11 (La. App.12/22/00), 774 So.2d 1227, 1235, writ denied, XXXX-XXXX (La.3/23/01), 787 So.2d 1001. Proof of any of these elements is sufficient for an award of consortium. Id. Since loss of consortium is a type of general damages, the trier of fact (in this case the jury) has much discretion in assessing loss of consortium damages. Jones v. Harris, XXXX-XXXX, p. 23 (La.App. 4th Cir.2/2/05), 896 So.2d 237, 251.
In this case, Mr. Bouquet testified that he has also been affected by Mrs. Bouquet's injuries. At the time of trial, the Bouquets had been married for thirty-eight *453 years. Mr. Bouquet testified that since the accident, Mrs. Bouquet is always on medication and is practically bedridden, he is unable to have a sexual relationship with her, and they are no longer socially active. Mr. Bouquet also testified that before the accident, he and Mrs. Bouquet enjoyed spending time together outside fishing, crawfishing, and boating; but now, they are no longer able to do so. Mr. Bouquet explained that he is now primarily responsible for all of the cooking, cleaning, housework, and driving. And, he must also attend to his wife's personal hygiene needs, such as washing her hair and shaving her legs.
I believe that it is clear from the record that Mr. Bouquet demonstrated extensive loss of society and companionship and loss of happiness in his marriage as a result of Mrs. Bouquet's accident, and therefore, an award of only $15,000 was an abuse of discretion. An examination of the jurisprudence leads me to believe that the lowest loss of consortium award appropriate under the particular circumstances of this case is $40,000. See Jones, XXXX-XXXX at p. 24, 896 So.2d at 251; Runnels v. Esteves, 550 So.2d 1225 (La.App. 4th Cir. 1989); and Linnear v. CenterPoint Energy Entex/Reliant Energy, 41,171, p. 15 (La. App. 2nd Cir.8/4/06), 945 So.2d 1, 22, reversed on other grounds, XXXX-XXXX (La.9/5/07), 966 So.2d 36. Accordingly, I would also amend the trial court's judgment insofar as it awarded Mr. Bouquet $15,000 in loss of consortium and I would raise that award to $40,000.
PETTIGREW, J., dissenting.
I respectfully dissent.
The majority is rejecting the jury's reasonable evaluations of credibility and reasonable inferences of fact and impermissibly substituting its own evaluations and inferences. For the reasons that follow, I would affirm the judgment of the trial court.
The issues raised by the plaintiffs in this appeal challenge the adequacy of the quantum of damages awarded by the jury. Through my review of the record in this matter, I find testimony and documentary evidence that calls into question Mrs. Bouquet's credibility with respect to the level of pain she experienced, both prior to and following surgery; the extent of her disability; and her need for high doses of narcotic pain medication. In addition, the record before this court presents many different possibilities with respect to future medical treatment; however, the record fails to demonstrate that Mrs. Bouquet will necessarily require or likely elect to undergo the treatment options available. Finally, it is clear from the record that Mrs. Bouquet's activities were restricted prior to this accident by the fact that she had been diagnosed as suffering from sarcoid, a condition characterized by an inflammation of the lungs, as well as emphysema, an ongoing destruction of the lung. These conditions caused Mrs. Bouquet to experience extreme shortness of breath that worsened upon exertion and were responsible in part for her award of Social Security Disability benefits on March 23, 2001. Thus, it is clear that even prior to the accident at Wal-Mart, Mrs. Bouquet was not in perfect health and could not participate in many of the outdoor activities that she and her husband once enjoyed.
Based upon a thorough review of the evidence before this court, I find no abuse of discretion with respect to the jury's award of $115,000.00 in general damages, $110,000.00 in future medical expenses, and $15,000.00 as damages for Mr. Bouquet's loss of consortium. While these damage awards may, in the opinion of some, fall on the low side, said awards are *454 not so low as to constitute an abuse of the trial court's vast discretion. Given the particular circumstances presented by the facts of this case, I cannot say that the amounts awarded by the jury fall below that which a reasonable trier of fact could assess. See Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
In disturbing the damage awards made by the jury, the majority plainly substituted its own evaluation of the record for the reasonable evaluations of credibility and reasonable inferences of fact made by the jury. Accordingly, I respectfully dissent.
NOTES
[1] During the course of the trial, the parties agreed, with permission from the court, to orally amend the record to reflect the proper name of the defendant in this case, Wal-Mart Louisiana, LLC.